1  SEYFARTH SHAW LLP
   Dana L. Peterson (SBN 178499)
2  dpeterson@seyfarth.com
   Elizabeth M. Levy (SBN 268926)
3  elevy@seyfarth.com
   Heather E. Horn (SBN 318242)
4  hhorn@seyfarth.com
   2029 Century Park East, Suite 3500
5  Los Angeles, California 90067-3021
   Telephone:  (310) 277-7200
6  Facsimile:  (310) 201-5219

7  Attorneys for Defendant
   J CHOO USA, INC.

8

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  MIRANDA KRAL,                          Case No.

14              Plaintiff,                 **DECLARATION OF HEATHER E.**
                                           **HORN IN SUPPORT OF**
15        v.                               **DEFENDANT J CHOO USA, INC'S**
                                           **NOTICE OF REMOVAL**
16  J CHOO USA, INC., a California
    Corporation; JARED CHILSTROM, an       *[Filed Concurrently With Defendant's*
17  individual; and DOES 1-100, inclusive, *Notice Of Removal, Declaration Of*
                                           *Jessica Baviello In Support; Corporate*
18              Defendants.                *Disclosure Statement; Notice Of*
                                           *Interested Parties; Civil Cover Sheet;*
19                                         *And Proof Of Service]*

20                                         [Removed from Los Angeles County
                                           Superior Court, Case No.
21                                         23STCV21828]

22

23

24

25

26

27

28

---

DECLARATION OF HEATHER E. HORN IN SUPPORT OF DEFENDANT J CHOO USA, INC'S NOTICE OF
REMOVAL

305591765v.1

## DECLARATION OF HEATHER E. HORN

I, Heather E. Horn, hereby declare:

1.      I am an attorney admitted to practice in the State of California, and I am an Associate of the law firm of Seyfarth Shaw LLP.  I am one of the lawyers responsible for representing Defendant J CHOO USA, INC. ("Defendant"), in the above-captioned lawsuit filed on behalf of Plaintiff Miranda Kral ("Plaintiff").  All of the pleadings and correspondence in this lawsuit are maintained in our office in the ordinary course of business under my direction and control. I have reviewed the pleadings and correspondence in preparing this declaration.

2.      Attached hereto as **Exhibit A** are true and correct copies of the Summons, Complaint, served on Defendant's designated agent for service of process on September 21, 2023. Additionally, I retrieved the Notice of Case Assignment, Notice of Case Management Conference, and Order to Show Cause re Failure to File Proof of Service as to Defendant Jared Chilstrom, scheduled for November 13, 2023, from the Los Angeles Superior Court's website. Plaintiff alleges in her Complaint that she resides in Los Angeles County, California.  (*See* Complaint, paragraph 1)

3.      Attached hereto as **Exhibit B** is a true and correct copy of Defendant's Answer to Plaintiff's Complaint served and filed on October 18, 2023, prior to filing this Notice of Removal.

4.      **Exhibits A and B** to the concurrently filed Notice of Removal constitute all of the pleadings in the Superior Court's record that have been served on Defendant or filed by Defendant.

5.      Attached hereto as **Exhibit C** is a true and correct copy of the Notice to State Court and to Adverse Party of Removal (without its attachment) that Defendant is filing and serving upon Plaintiff.

6.      At my direction, my firm conducted a public records search through October 4, 2023.  These searches show that at all time relevant Plaintiff has had an address in Los

DECLARATION OF HEATHER E. HORN IN SUPPORT OF DEFENDANT J CHOO USA, INC'S NOTICE OF REMOVAL

305591765v.1

Angeles county.  Additionally, during the relevant period of November 2021 to present, the LexisNexis records do not show addresses for Plaintiff other than in the State of California during her employment with Defendant or thereafter.  Attached hereto as **Exhibit D** is a true and correct copy of the public records search, redacted to comply with Federal Rule of Civil Procedure 5.2 and Local Rule 5.2-1.

7.    Additionally, Plaintiff's June 30, 2023 administrative charge filed with the California Civil Rights Department states that she resides in California.

8.    I anticipate depositions being taken in this case and that ultimately Defendant will file a Motion for Summary Judgment.  I have been licensed to practice law since December 2017.  Based on my experience, attorneys' fees in employment discrimination cases often exceed $75,000.  In this regard, it more likely than not that the fees will exceed $75,000 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds beyond the summary judgment stage

9.    Attached hereto as **Exhibits E and F** are true and correct copies of jury verdict reports for cases where plaintiffs allege they were discriminated against and discharged because of a protected status and suffered emotional distress.

10.    Attached hereto as **Exhibit G** are true and correct copies of jury verdict reports for cases that have awarded attorneys' fees in excess of $75,000 in cases involving discrimination, retaliation, and wrongful termination.

I declare under penalty of perjury under the laws of the United States and the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of October, 2023.

_____
Heather E. Horn

3

# EXHIBIT A

1   ADAM REISNER, ESQ., (State Bar No. 204351)
    TESSA KING, ESQ., (State Bar No. 251408)
2   IAN G. STERLING, ESQ., (State Bar No. 302941)
    **REISNER & KING LLP**
3   15303 Ventura Blvd., Suite 1260
    Sherman Oaks, California 91403
4   Phone: (818) 981-0901
5   Fax:    (818) 981-0902

6   Attorneys for PLAINTIFF **Miranda Kral**

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/11/2023 5:11 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **FOR THE COUNTY OF LOS ANGELES**

10

11  MIRANDA KRAL,                          ) Case No.: 23STCV21828
                                           )
12              Plaintiff,                  )   **COMPLAINT FOR DAMAGES:**
                                           )
13                                          ) **(1) SEX/GENDER HARASSMENT IN**
        vs.                                 )     **VIOLATION OF CAL. GOV. CODE**
14                                          )     **§§ 12940 ET SEQ. ("FEHA");**
    J CHOO USA, INC., a California Corporation; )
15  JARED CHILSTROM, an individual; and    ) **(2) SEX/GENDER DISCRIMINATION**
16  DOES 1-100, inclusive,                  )     **IN VIOLATION OF THE FEHA;**
                                           )
17                                          ) **(3) SEX/GENDER RETALIATION IN**
                Defendants.                 )     **VIOLATION OF THE FEHA;**
18                                          )
19                                          ) **(4) SEXUAL ORIENTATION**
                                           )     **HARASSMENT IN VIOLATION OF**
20                                          )     **THE FEHA**
21                                          )
                                           ) **(5) SEXUAL ORIENTATION**
25                                          )     **DISCRIMINATION IN VIOLATION**
                                           )     **OF THE FEHA;**
23                                          )
24                                          ) **(6) SEXUAL ORIENTATION**
                                           )     **RETALIATION IN VIOLATION OF**
25                                          )     **THE FEHA;**
26                                          )
                                           ) **(7) FAILURE TO PREVENT AND**
27                                          )     **INVESTIGATE HARASSMENT,**
                                           )     **DISCRIMINATION, OR**
28                                          )     **RETALIATION**

                                   1
                        **COMPLAINT FOR DAMAGES**

)
)   **(8) WHISTLEBLOWER**
)     **RETALIATION, VIOLATION OF**
)     **CAL. <u>LABOR CODE</u> § 1102.5;**
)
)   **(9) RETALIATION AND**
)     **CONSTRUCTIVE WRONGFUL**
)     **TERMINATION IN VIOLATION OF**
)     **PUBLIC POLICY;**
)
)   **(10) INTENTIONAL INFLICTION OF**
)     **EMOTIONAL DISTRESS.**
)
)   **<u>JURY TRIAL DEMANDED</u>**
)

COMES NOW MIRANDA KRAL (hereinafter referred to as "Plaintiff") and complains against the above-named Defendants and for causes of action against the Defendants, and each of them, as follows:

**I.**

**<u>FIRST CAUSE OF ACTION</u>**

**For Sex/Gender Harassment in Employment**

**[California <u>Government Code</u> §§ 12940 et seq.]**

**Against All Defendants & DOES 1 Through 100, Inclusive**

1.    At all times mentioned herein, Plaintiff was, and now is, an individual residing and/or domiciled in the County of Los Angeles, State of California.

2.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein, Defendant J CHOO USA, INC. (hereinafter referred to as "Defendant J CHOO" and collectively with all other Defendants as "Defendants") was, and now is, a corporation duly organized and existing under the laws of the State of California, having its principal place of business in the County of Los Angeles, State of California.

3.    Plaintiff is informed and believed, and thereon alleges, that at all times mentioned herein, Defendant JARED CHILSTROM (hereinafter referred to as "Defendant CHILSTROM" and collectively with all other Defendants as "Defendants"), was, and now is, an individual domiciled

2

**COMPLAINT FOR DAMAGES**

in the County of Los Angeles, State of California, and was an Owner, Manager, Supervisor, Managing Agent, and/or Employee of Defendant J CHOO USA, INC.

4.      Plaintiff is ignorant of the true names and capacities, whether corporate, associate, individual, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of the fictitiously named Defendants when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated as "DOES" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to that Plaintiff, as hereinafter alleged.

5.      Plaintiff is informed and believes and thereon alleges that each of the Defendants named herein has, at all times relevant to this action, been the owner, officer, agent, employee and/or representative of the remaining Defendants and has acted within the course and scope of such agency and employment, and with the permission and consent of the co-defendants.

6.      Plaintiff is informed and believes, and thereon alleges, that Defendants and DOES 1-100 employ as a managing agent a person who directly controlled the wages, hours, and working conditions of Plaintiff while they were employed by all other Defendants and DOES 1-100.

7.      Plaintiff was hired by Defendants in or around November 2021.

8.      During her employment, Plaintiff worked at the J CHOO store located 6600 Topanga Canyon Blvd., Canoga Park, CA 91303.

9.      On a severe and/or pervasive basis beginning in or around November 2021 and continuing at least through August 18, 2022, and continuing, Defendants and DOES 1 through 100, and each of them, harassed Plaintiff because of her sex/gender (female), through the following actions, among others:

        a)      Defendant CHILSTROM would regularly, on a daily basis, make demeaning and harassing sex/gender-based comments to Plaintiff about female customers' bodies, including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and "She needs to go my doctor [for cosmetic surgery]." Defendant

3

**COMPLAINT FOR DAMAGES**

CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b)      To harass Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sex/gender, saying "I come from a Jewish household and Jewish men don't respect women."

c)      To harass Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d)      To harass Plaintiff, Defendant CHILSTROM made other harassing sex/gender based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in. CHILSTROM also referred to his 8 year old niece as a "bitch".

e)      Plaintiff complained to Mark Olson, her Store Manager, at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

f)      Store Manager Olson was often present when these comments were made by CHILSTROM. To harass Plaintiff, Store Manager Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby also ratifying and condoning CHILSTROM's harassment of Plaintiff.

g)      In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to harass Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no longer work in retail and get a 9 to 5 job." CHILSTROM also told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)      Plaintiff called Store Manager Mark Olson to complain about CHILSTROM's harassment and Olson told Plaintiff to make an official complaint with human resources. That same day, Plaintiff made a complaint about CHILSTROM's harassment of her to J

**COMPLAINT FOR DAMAGES**

CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. To harass Plaintiff, Baviello told Plaintiff "if you don't feel safe then don't go back to the store." Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was harassing her.

i)    Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to harass Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j)    To harass Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints,  including that she did not feel safe working alone with CHILSTROM.

k)    In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To harass Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l)    Following CHILSTROM's outburst, Plaintiff told Olson that she was going to make a complaint to human resources. To harass Plaintiff, Store Manager Olson attempted to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment. To harass Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM

5

"feels a certain way about you, what he said was okay, but the way he delivered it was not."

m)    Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but, to harass Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)    The next day, Plaintiff made a second complaint to human resources about CHILSTROM's harassment. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To harass Plaintiff, Baviello did not respond to these comments and took no action in response to them.

o)    Human resources told Plaintiff that they would investigate and get back to her, but to harass Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)    In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)    Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away, and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any repercussions.

r)    To harass Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

s)    To harass Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's

6

**COMPLAINT FOR DAMAGES**

employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

t)        Plaintiff was harassed by Defendants, and each of them, by denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, failing to investigate Plaintiff's complaints, terminating Plaintiff's employment, and refusing to return Plaintiff back to work, because of Plaintiff's sex/gender.

10.    The acts and conduct of Defendants and DOES 1 through 100 violated Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100 concerning harassment against persons, such as Plaintiff, on the basis of sex/gender, and the prohibition of sex/gender-based harassment. Said statutes were intended to prevent the type of injury and damage herein set forth. Plaintiff was, at all times material hereto, a female employee and within a protected class covered by California Government Code § 12940, prohibiting sex/gender harassment in employment.

11.    By the acts and conduct described above, Defendants and DOES 1 through 100, in violation of said statutes, knew about, or should have known about, and failed to investigate and/or properly investigate, prevent or remedy the sex/gender-based harassment. The acts of harassment described herein were sufficiently severe and/or pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was harassed, Plaintiff's sex/gender and/or complaints about the unlawful sex/gender-based harassment were motivating reasons and/or factors in Defendants' conduct.

12.    As a result, Plaintiff filed timely charges and complaints of sex/gender harassment, discrimination, and retaliation with the California Civil Rights Agency [formerly the California Department of Fair Employment and Housing] and has received Notice(s) of Right to Sue in a California Superior Court pursuant to California Government Code § 12965(c). Plaintiff has therefore exhausted Plaintiff's administrative remedies under the California Government Code. Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference

**COMPLAINT FOR DAMAGES**

hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right to Sue Notices and by reference hereto are made a part hereof.

13.    As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

14.    As a further legal result of the acts and omissions of Defendants, and each of them, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

15.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

16.    As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused, and did suffer, and continues to suffer severe and/or permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

17.    The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO, and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees Defendants  J CHOO, and DOES

8

**COMPLAINT FOR DAMAGES**

1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California <u>Civil Code</u> § 3294(a) and (b).

18.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California <u>Civil Code</u> § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

19.    As a result of the harassing acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California <u>Government Code</u> § 12965(c).

20.    The FEHA also provides remedies, including but not limited to, declaratory and injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of Defendants' unlawful conduct.

**II.**

**<u>SECOND CAUSE OF ACTION</u>**

**For Sex/Gender Discrimination in Employment**

**[California <u>Government Code</u> §§ 12940 et seq.]**

**Against Defendants J CHOO & DOES 1 Through 100, Only**

21.    Plaintiff incorporates herein by reference each and every paragraph in this Complaint as though duly set forth in full herein.

22.    Beginning in or around November 2021 and continuing at least through August 18, 2022, and continuing, Defendants and DOES 1 through 100, and each of them, discriminated against Plaintiff because of her sex/gender (female), through the following actions, among others:

a)    Defendant CHILSTROM would regularly, on a daily basis, make demeaning and discriminatory sex/gender-based comments to Plaintiff about female customers' bodies, including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and "She needs to go my doctor [for cosmetic surgery]." Defendant

9

CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b)      To discriminate against Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sex/gender, saying "I come from a Jewish household and Jewish men don't respect women."

c)      To discriminate against Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d)      To discriminate against Plaintiff, Defendant CHILSTROM made other discriminatory sex/gender based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in. CHILSTROM also referred to his 8 year old niece as a "bitch".

e)      Plaintiff complained to Store Manager Olson at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

f)      Store Manager Olson was often present when these comments were made by CHILSTROM. To discriminate against Plaintiff, Store Manager Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby also ratifying and condoning CHILSTROM's discrimination of Plaintiff.

g)      In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to discriminate against Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no longer work in retail and get a 9 to 5 job." CHILSTROM also told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)      Plaintiff called Store Manager Olson to complain about CHILSTROM's discrimination and Olson told Plaintiff to make an official complaint with human resources.

10

That same day, Plaintiff made a complaint about CHILSTROM's discrimination of her to J CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was discriminating against her.

i) Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to discriminate against Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j) To discriminate against Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints, including that she did not feel safe working alone with CHILSTROM.

k) In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To discriminate against Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l) Following CHILSTROM's outburst, Plaintiff told Olson that she was going to make a complaint to human resources. To discriminate against Plaintiff, Store Manager Olson attempted to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment.

11

To discriminate against Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM "feels a certain way about you, what he said was okay, but the way he delivered it was not."

m)      Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but to discriminate against Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)      The next day, Plaintiff made a second complaint to human resources about CHILSTROM's discrimination. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To discriminate against Plaintiff, Baviello did not respond to these comments and took no action in response to them.

o)      Human resources told Plaintiff that they would investigate and get back to her, but to discriminate against Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)      In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager, Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)      Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away, and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any repercussions.

r)      To discriminate against Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

12

**COMPLAINT FOR DAMAGES**

s)     To discriminate against Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

t)     Plaintiff was treated differently, disparately, and negatively by Defendants, and each of them, by denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, failing to investigate Plaintiff's complaints, terminating Plaintiff's employment, and refusing to return Plaintiff back to work, because of Plaintiff's sex/gender.

23.     The above acts and conduct of Defendants and DOES 1 through 100 violated California Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100 concerning discrimination against persons, such as Plaintiff, on the basis of sex/gender and the prohibition of sex/gender-based discrimination.  Said statutes were intended to prevent the type of injury and damage herein set forth. Plaintiff was, at all times material hereto, a female employee and within a protected class covered by California Government Code § 12940, prohibiting sex/gender-based discrimination in employment.

24.     By the acts and conduct described above, Defendants and DOES 1 through 100, violation of said statutes, knew about, or should have known about, and failed to investigate and/or properly investigate, prevent or remedy the sex/gender discrimination. When Plaintiff was discriminated against, Plaintiff's sex/gender and/or complaints about the unlawful sex/gender-based discrimination were motivating reasons and/or factors in Defendants' conduct.

25.     As a result, Plaintiff filed timely charges and complaints of sex/gender discrimination with the California Civil Rights Department [formerly the Department of Fair Employment and Housing] and has received Notice(s) of Right to Sue in a California Superior Court pursuant to California Government Code § 12965(c). Plaintiff has therefore exhausted Plaintiff's administrative remedies under the California Government Code. Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached

**COMPLAINT FOR DAMAGES**

hereto and incorporated herein as Exhibit "B" are said Right to Sue Notices and by reference hereto are made a part hereof.

26.     As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

27.     As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that Plaintiff may in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

28.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

29.     As a further direct and legal result of the acts and conduct of Defendants and DOES 1 through 100, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

30.     The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees Defendants J CHOO and DOES

**COMPLAINT FOR DAMAGES**

1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

31.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

32.    As a result of the discriminatory acts of Defendants and DOES 1 through 100, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(c).

33.    The FEHA also provides remedies, including but not limited to, declaratory and injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of Defendants' unlawful conduct.

### III.

### THIRD CAUSE OF ACTION

**For Sex/Gender Retaliation in Employment**

**[California Government Code §§ 12940 et seq.]**

**Against Defendants J CHOO & DOES 1 Through 100, Only**

34.    Plaintiff incorporates herein by reference each and every paragraph in this Complaint as though duly set forth in full herein.

35.    Plaintiff engaged in protected activity by complaining about and protesting against the sex/gender harassment and discrimination to which Plaintiff was subjected.

36.    However, Defendants and DOES 1 through 100, and each of them, retaliated against Plaintiff because of, at least in part, her complaints of sex/gender harassment and discrimination by subjecting Plaintiff to adverse employment actions, including but not limited to:

a)    Defendant CHILSTROM would regularly, on a daily basis, make demeaning and retaliatory sex/gender-based comments to Plaintiff about female customers' bodies,

15

**COMPLAINT FOR DAMAGES**

including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and "She needs to go my doctor [for cosmetic surgery]." Defendant CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b)    To retaliate against Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sex/gender, saying "I come from a Jewish household and Jewish men don't respect women."

c)    To retaliate against Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d)    To retaliate against Plaintiff, Defendant CHILSTROM made other retaliatory sex/gender based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in. CHILSTROM also referred to his 8 year old niece as a "bitch".

e)    Mark Olson, a store manager, was often present when these comments were made. Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby ratifying and condoning CHILSTROM's retaliation against Plaintiff.

f)    Plaintiff complained to Mark Olson at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

g)    In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to retaliate against Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no longer work in retail and get a 9 to 5 job." CHILSTROM also told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)    Plaintiff called Store Manager Mark Olson to complain about CHILSTROM's retaliation and Olson told Plaintiff to make an official complaint with human resources.

**COMPLAINT FOR DAMAGES**

That same day, Plaintiff made a complaint about CHILSTROM's retaliation to J CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was retaliating against her.

i)      Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to retaliate against Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j)      To retaliate against Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints, including that she did not feel safe working alone with CHILSTROM.

k)      In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To retaliate against Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l)      Following CHILSTROM's outburst, Plaintiff told Olson that she was going to make a complaint to human resources. To retaliate against Plaintiff, Store Manager Olson attempted to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment. To retaliate  against Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM "feels a certain way about you, what he said was okay, but

**COMPLAINT FOR DAMAGES**

the way he delivered it was not."

m)      Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but to retaliate against Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)      The next day, Plaintiff made a second complaint to human resources about CHILSTROM's harassment, discrimination, and retaliation. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To retaliate against Plaintiff, Baviello did not respond to these comments and took no action in response to them.

o)      Human resources told Plaintiff that they would investigate and get back to her, but to retaliate against Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)      In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager, Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)      Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away, and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any repercussions.

r)      To retaliate against Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

s)      To retaliate against Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica

18

Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

t)      Plaintiff was treated differently, disparately, and negatively because of her complaints regarding the harassment and discrimination predicated on her sex/gender, and as a result Defendants retaliated against Plaintiff by denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, terminating Plaintiff's employment, and refusing to return Plaintiff back to work.

37.    The acts and conduct of Defendants and DOES 1 through 100 violated California Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100 concerning retaliation against persons, such as Plaintiff, on the basis of resisting or complaining about sex/gender-based harassment and discrimination. Said statutes were intended to prevent the type of injury and damage herein set forth. Plaintiff was, at all times material hereto, a female employee (and one who complained) and within a protected class covered by Cal. Government Code § 12940, prohibiting sex/gender-based retaliation in employment.

38.    By the acts and conduct described above, Defendants and DOES 1 through 100, in violation of said statutes, knew about, or should have known about, and failed to investigate and/or properly investigate, prevent or remedy the sex/gender-based retaliation. The acts of harassment, discrimination, and retaliation described herein were sufficiently severe and/or pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was retaliated against, Plaintiff's sex/gender and/or complaints about the unlawful sex/gender-based harassment and discrimination were motivating reasons and/or factors in Defendants' conduct.

39.    As a result, Plaintiff filed timely charges and complaints of disability harassment, discrimination, and retaliation with the California Civil Rights Department [formerly, the California Department of Fair Employment and Housing] and has received Notice(s) of Right to Sue in a California Superior Court pursuant to California Government Code § 12965(c). Plaintiff has therefore exhausted Plaintiff's administrative remedies under the California Government

**COMPLAINT FOR DAMAGES**

Code. Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right to Sue Notices and by reference hereto are made a part hereof.

40.     As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

41.     As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that Plaintiff may in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

42.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

43.     As a further direct and legal result of the above-described acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

44.     The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 through 100, and with the express knowledge,

consent, and/or ratification of managerial agents and employees of Defendants J CHOO and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

45.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

46.    As a result of the retaliatory acts of Defendants and DOES 1 through 100, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(c).

47.    FEHA also provides remedies, including but not limited to, declaratory and injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of Defendants' unlawful conduct.

## IV.

## FOURTH CAUSE OF ACTION

### For Sexual Orientation Harassment

### [California Government Code §§ 12940 et seq.]

### Against All Defendants & DOES 1 Through 100, Inclusive

48.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

49.    During all relevant times herein, Defendant CHILSTROM, J CHOO Store Manager Mark Olson, and J CHOO District Manager Roger Swift are and were gay men.

50.    During all relevant times herein, Plaintiff is and was a heterosexual female.

51.    On a severe and/or pervasive basis beginning in or around November 2021 and continuing at least through August 18, 2022, and continuing, Defendants and DOES 1 through 100, and each of them, harassed Plaintiff because of her sexual orientation (heterosexual), through the following

21

actions, among others:

a)    Defendant CHILSTROM would regularly, on a daily basis, make demeaning sexual-orientation-based comments to Plaintiff about female customers' bodies, including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and "She needs to go my doctor [for cosmetic surgery]." Defendant CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b)    To harass Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sexual orientation, saying "I come from a Jewish household and Jewish men don't respect women."

c)    To harass Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d)    To harass Plaintiff, Defendant CHILSTROM made other harassing sexual-orientation based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in.

e)    Plaintiff complained to Mark Olson, her Store Manager, at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

f)    Store Manager Olson was often present when these comments were made by CHILSTROM. To harass Plaintiff, Store Manager Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby also ratifying and condoning CHILSTROM's harassment of Plaintiff.

g)    In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to harass Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no

22

**COMPLAINT FOR DAMAGES**

longer work in retail and get a 9 to 5 job." CHILSTROM also told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)      Plaintiff called Store Manager Mark Olson to complain about CHILSTROM's harassment and Olson told Plaintiff to make an official complaint with human resources. That same day, Plaintiff made a complaint about CHILSTROM's harassment of her to J CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. To harass Plaintiff, Baviello told Plaintiff "if you don't feel safe then don't go back to the store." Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was harassing her.

i)       Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to harass Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j)      To harass Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints,  including that she did not feel safe working alone with CHILSTROM.

k)      In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To harass Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l)      Following CHILSTROM's outburst, Plaintiff told Olson that she was going to make a complaint to human resources. To harass Plaintiff, Store Manager Olson attempted

**COMPLAINT FOR DAMAGES**

to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment. To harass Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM "feels a certain way about you, what he said was okay, but the way he delivered it was not."

m)    Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but, to harass Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)    The next day, Plaintiff made a second complaint to human resources about CHILSTROM's harassment. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To harass Plaintiff, Baviello did not respond to these comments and took no action in response to them.

o)    Human resources told Plaintiff that they would investigate and get back to her, but to harass Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)    In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)    Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away, and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any

24

**COMPLAINT FOR DAMAGES**

repercussions.

r)    To harass Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

s)    To harass Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

t)    Plaintiff was harassed by Defendants, and each of them, by denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, failing to investigate Plaintiff's complaints, terminating Plaintiff's employment, and refusing to return Plaintiff back to work, because of Plaintiff's sexual orientation.

52.    The acts and conduct of Defendants and DOES 1 through 100 violated Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100 concerning harassment against persons, such as Plaintiff, on the basis of sexual orientation, and the prohibition of sex/gender-based harassment. Said statutes were intended to prevent the type of injury and damage herein set forth. Plaintiff was, at all times material hereto, a heterosexual employee and within a protected class covered by California Government Code § 12940, prohibiting sexual orientation harassment in employment.

53.    By the acts and conduct described above, Defendants and DOES 1 through 100, in violation of said statutes, knew about, or should have known about, and failed to investigate and/or properly investigate, prevent or remedy the sexual orientation-based harassment. The acts of harassment described herein were sufficiently severe and/or pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was harassed, Plaintiff's sexual orientation and/or complaints about the unlawful sexual orientation-based harassment were motivating reasons and/or factors in Defendants' conduct.

54.    As a result, Plaintiff filed timely charges and complaints of sexual orientation harassment,

**COMPLAINT FOR DAMAGES**

discrimination, and retaliation with the California Civil Rights Agency [formerly the California Department of Fair Employment and Housing] and has received Notice(s) of Right to Sue in a California Superior Court pursuant to California Government Code § 12965(c). Plaintiff has therefore exhausted Plaintiff's administrative remedies under the California Government Code. Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right to Sue Notices and by reference hereto are made a part hereof.

55.    As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

56.    As a further legal result of the acts and omissions of Defendants, and each of them, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

57.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

58.    As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused, and did suffer, and continues to suffer severe and/or permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

**COMPLAINT FOR DAMAGES**

59.    The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO, and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees Defendants J CHOO, and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

60.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

61.    As a result of the harassing acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(c).

62.    The FEHA also provides remedies, including but not limited to, declaratory and injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of Defendants' unlawful conduct.

**V.**

**FIFTH CAUSE OF ACTION**

**For Sexual Orientation Discrimination**

**[California Government Code §§ 12940 et seq.]**

**Against Defendants J CHOO & DOES 1 Through 100, Only**

63.    Plaintiff incorporates herein by reference each and every paragraph in this Complaint as though duly set forth in full herein.

64.    During all relevant times herein, Defendant CHILSTROM, J CHOO Store Manager Mark Olson, and J CHOO District Manager Roger Swift are and were gay men.

27

**COMPLAINT FOR DAMAGES**

65. During all relevant times herein, Plaintiff is and was a heterosexual female.

66. Beginning in or around November 2021 and continuing at least through August 18, 2022, and continuing, Defendants and DOES 1 through 100, and each of them, discriminated against Plaintiff because of her sexual orientation (heterosexual), through the following actions, among others:

a) Defendant CHILSTROM would regularly, on a daily basis, make demeaning and discriminatory sexual-orientation-based comments to Plaintiff about female customers' bodies, including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and "She needs to go my doctor [for cosmetic surgery]." Defendant CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b) To discriminate against Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sexual orientation, saying "I come from a Jewish household and Jewish men don't respect women."

c) To discriminate against Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d) To discriminate against Plaintiff, Defendant CHILSTROM made other discriminatory sexual orientation-based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in. CHILSTROM also referred to his 8 year old niece as a "bitch".

e) Plaintiff complained to Store Manager Olson at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

f) Store Manager Olson was often present when these comments were made by CHILSTROM. To discriminate against Plaintiff, Store Manager Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby also ratifying and condoning

**COMPLAINT FOR DAMAGES**

CHILSTROM's discrimination of Plaintiff.

g)      In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to discriminate against Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no longer work in retail and get a 9 to 5 job." CHILSTROM also told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)      Plaintiff called Store Manager Mark Olson to complain about CHILSTROM's discrimination and Olson told Plaintiff to make an official complaint with human resources. That same day, Plaintiff made a complaint about CHILSTROM's discrimination of her to J CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was discriminating against her.

i)      Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to discriminate against Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j)      To discriminate against Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints, including that she did not feel safe working alone with CHILSTROM.

k)      In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To discriminate against Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without

29

limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l)      Following CHILSTROM's outburst, Plaintiff told Olson that she was going to make a complaint to human resources. To discriminate against Plaintiff, Store Manager Olson attempted to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment. To discriminate against Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM "feels a certain way about you, what he said was okay, but the way he delivered it was not."

m)      Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but to discriminate against Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)      The next day, Plaintiff made a second complaint to human resources about CHILSTROM's discrimination. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To discriminate against Plaintiff, Baviello did not respond to these comments and took no action in response to them.

o)      Human resources told Plaintiff that they would investigate and get back to her, but to discriminate against Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)      In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager, Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link

to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)      Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away, and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any repercussions.

r)      To discriminate against Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

s)      To discriminate against Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

t)      Plaintiff was treated differently, disparately, and negatively by Defendants, and each of them, by denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, failing to investigate Plaintiff's complaints, terminating Plaintiff's employment, and refusing to return Plaintiff back to work, because of Plaintiff's sexual orientation.

67.    The above acts and conduct of Defendants and DOES 1 through 100 violated California Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100 concerning discrimination against persons, such as Plaintiff, on the basis of sexual orientation and the prohibition of sexual orientation-based discrimination. Said statutes were intended to prevent the type of injury and damage herein set forth. Plaintiff was, at all times material hereto, a heterosexual employee and within a protected class covered by California Government Code § 12940, prohibiting sex/gender-based discrimination in employment.

68.    By the acts and conduct described above, Defendants and DOES 1 through 100, violation of said statutes, knew about, or should have known about, and failed to investigate and/or properly

investigate, prevent or remedy the sex/gender discrimination. When Plaintiff was discriminated against, Plaintiff's sexual orientation and/or complaints about the unlawful sexual orientation-based discrimination were motivating reasons and/or factors in Defendants' conduct.

69.     As a result, Plaintiff filed timely charges and complaints of sexual orientation discrimination with the California Civil Rights Department [formerly the Department of Fair Employment and Housing] and has received Notice(s) of Right to Sue in a California Superior Court pursuant to California Government Code § 12965(c). Plaintiff has therefore exhausted Plaintiff's administrative remedies under the California Government Code. Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right to Sue Notices and by reference hereto are made a part hereof.

70.     As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

71.     As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that Plaintiff may in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

72.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

73.     As a further direct and legal result of the acts and conduct of Defendants and DOES 1

32

**COMPLAINT FOR DAMAGES**

through 100, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

74.    The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees Defendants J CHOO and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

75.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

76.    As a result of the discriminatory acts of Defendants and DOES 1 through 100, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(c).

77.    The FEHA also provides remedies, including but not limited to, declaratory and injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of Defendants' unlawful conduct.

/ / /

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

## VI.

## SIXTH CAUSE OF ACTION

### For Sexual Orientation Retaliation

### [California Government Code §§ 12940 et seq.]

### Against Defendants J CHOO & DOES 1 Through 100, Only

78.     Plaintiff incorporates herein by reference each and every paragraph in this Complaint as though duly set forth in full herein.

79.     Plaintiff engaged in protected activity by complaining about and protesting against the sexual orientation harassment and discrimination to which Plaintiff was subjected.

80.     However, Defendants and DOES 1 through 100, and each of them, retaliated against Plaintiff because of, at least in part, her complaints of sexual orientation harassment and discrimination by subjecting Plaintiff to adverse employment actions, including but not limited to:

a)      Defendant CHILSTROM would regularly, on a daily basis, make demeaning and retaliatory sexual-orientation-based comments to Plaintiff about female customers' bodies, including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and "She needs to go my doctor [for cosmetic surgery]." Defendant CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b)      To retaliate against Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sexual orientation, saying "I come from a Jewish household and Jewish men don't respect women."

c)      To retaliate against Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d)      To retaliate against Plaintiff, Defendant CHILSTROM made other retaliatory sexual-orientation based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in.

34

**COMPLAINT FOR DAMAGES**

e)       Plaintiff complained to Mark Olson, her Store Manager, at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

f)       Store Manager Olson was often present when these comments were made by CHILSTROM. To retaliate against Plaintiff, Store Manager Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby also ratifying and condoning CHILSTROM's retaliation against Plaintiff.

g)       In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to retaliate against Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no longer work in retail and get a 9 to 5 job." CHILSTROM also told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)       Plaintiff called Store Manager Mark Olson to complain about CHILSTROM's retaliation and Olson told Plaintiff to make an official complaint with human resources. That same day, Plaintiff made a complaint about CHILSTROM's harassment of her to J CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. To retaliate against Plaintiff, Baviello told Plaintiff "if you don't feel safe then don't go back to the store." Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was retaliating against her.

i)        Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to retaliate against Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j)        To retaliate against Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints, including that she did not feel safe working alone

35

**COMPLAINT FOR DAMAGES**

with CHILSTROM.

k)      In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To retaliate against Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l)      Following CHILSTROM's outburst, Plaintiff told Olson that she was going to make a complaint to human resources. To retaliate against Plaintiff, Store Manager Olson attempted to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment. To retaliate against Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM "feels a certain way about you, what he said was okay, but the way he delivered it was not."

m)      Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but, to retaliate against Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)      The next day, Plaintiff made a second complaint to human resources about CHILSTROM's harassment, discrimination, and retaliation. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To retaliate against Plaintiff, Baviello did not respond to these comments and took no action in response to them.

**COMPLAINT FOR DAMAGES**

o)    Human resources told Plaintiff that they would investigate and get back to her, but to retaliate against Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)    In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)    Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away, and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any repercussions.

r)    To retaliate against Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

s)    To retaliate against Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

t)    Plaintiff was treated differently, disparately, and negatively because of her complaints regarding the harassment and discrimination predicated on her sexual orientation, and as a result Defendants retaliated against Plaintiff by denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, terminating Plaintiff's employment, and refusing to return Plaintiff back to work.

81.    The acts and conduct of Defendants and DOES 1 through 100 violated California Government Code §§ 12940 et seq. Said statutes impose certain duties upon Defendants and DOES 1 through 100 concerning retaliation against persons, such as Plaintiff, on the basis of resisting or

complaining about sexual orientation-based harassment and discrimination. Said statutes were intended to prevent the type of injury and damage herein set forth. Plaintiff was, at all times material hereto, a heterosexual employee (and one who complained) and within a protected class covered by Cal. Government Code § 12940, prohibiting sexual orientation-based retaliation in employment.

82.    By the acts and conduct described above, Defendants and DOES 1 through 100, in violation of said statutes, knew about, or should have known about, and failed to investigate and/or properly investigate, prevent or remedy the sexual orientation-based retaliation. The acts of harassment, discrimination, and retaliation described herein were sufficiently severe and/or pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was retaliated against, Plaintiff's sexual orientation and/or complaints about the unlawful sexual orientation-based harassment and discrimination were motivating reasons and/or factors in Defendants' conduct.

83.    As a result, Plaintiff filed timely charges and complaints of sexual orientation harassment, discrimination, and retaliation with the California Civil Rights Department [formerly, the California Department of Fair Employment and Housing] and has received Notice(s) of Right to Sue in a California Superior Court pursuant to California Government Code § 12965(c). Plaintiff has therefore exhausted Plaintiff's administrative remedies under the California Government Code. Attached hereto and incorporated herein as Exhibit "A" are said Complaints and by reference hereto are made a part hereof. Attached hereto and incorporated herein as Exhibit "B" are said Right to Sue Notices and by reference hereto are made a part hereof.

84.    As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety.

85.    As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, and each of them, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and

**COMPLAINT FOR DAMAGES**

thereon alleges, that Plaintiff may in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

86.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

87.    As a further direct and legal result of the above-described acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

88.    The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees Defendants J CHOO and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

89.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

90.    As a result of the retaliatory acts of Defendants and DOES 1 through 100, and each of

39

them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(c).

91.    FEHA also provides remedies, including but not limited to, declaratory and injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of Defendants' unlawful conduct.

## VII.

## SEVENTH CAUSE OF ACTION

**For Failure to Prevent and Investigate Harassment, Discrimination, and/or Retaliation**

**[California Government Code §§ 12940 et seq.]**

**Against Defendants J CHOO & DOES 1 Through 100, Only**

92.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

93.    At all times relevant herein, Defendants J CHOO and DOES 1 through 100, by and through their agents and employees, were aware of the sex/gender and sexual orientation discrimination and harassment of Plaintiff at their workplace.

94.    Defendants J CHOO and DOES 1 through 100, by and through their agents and employees, were aware that Plaintiff and others were harassed, discriminated and retaliated against based upon their sex/gender and sexual orientation.

95.    Defendants J CHOO and DOES 1 through 100, by and through their agents and employees, failed to investigate either the deplorable conditions of Plaintiff's employment or the harassment and discrimination Plaintiff and others were subjected to by Defendant CHILSTROM.

96.    As a direct and proximate result of Defendants J CHOO's and DOES 1 through 100's willful, knowing, and intentional acts, and their failure to investigate, and failure to prevent and failure to take appropriate remedial action, Plaintiff has suffered and will continue to suffer mental distress, anguish, indignation, a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

**COMPLAINT FOR DAMAGES**

97.     The aforementioned acts of Defendants and DOES 1 through 100 were willful, wanton, malicious, intentional, oppressive and/or despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 through 100, and with the express knowledge, consent, and/or ratification of managerial agents and employees Defendants J CHOO and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

## VIII.

## EIGHTH CAUSE OF ACTION

### For Whistleblower Violations

### [California Labor Code § 1102.5]

### Against Defendants J CHOO and DOES 1 Through 100, Only

98.     Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

99.     Plaintiff was employed by Defendants beginning in or around November 2021.

100.    Defendants retaliated against Plaintiff as a result of Plaintiff blowing the whistle/complaining about/protesting against Defendants' unlawful activities, of which Plaintiff had reasonable cause to believe violated the law.

101.    It is a violation of the California whistleblower statute, Cal. Labor Code § 1102.5, to unlawfully retaliate, punish, discharge, and/or deny opportunities to an employee for refusing to violate the law and/or for protesting against unlawful activities or activities reasonably perceived by the employee to be unlawful, to a government agency or directly to his employer.

102.    Plaintiff was a whistleblower pursuant to Cal. Labor Code § 1102.5, as she complained about and/or protested against the following violations of law, without limitation:

> a)     Defendant CHILSTROM would regularly, on a daily basis, make demeaning and harassing, discriminatory, and/or retaliatory sex/gender-based and/or sexual orientation-based comments to Plaintiff about female customers' bodies, including without limitation: "She needs a boob job," "Her ass is fake," "She looks like shit," "Her butt is bad," and

41

**COMPLAINT FOR DAMAGES**

"She needs to go my doctor [for cosmetic surgery]." Defendant CHILSTROM would criticize female customer who did not make a purchase by calling them "trolls".

b)     To harass, discriminate, and/or retaliate against Plaintiff, Defendant CHILSTROM repeatedly told Plaintiff that he did not respect her because of her sex/gender and/or sexual orientation, saying "I come from a Jewish household and Jewish men don't respect women."

c)     To harass, discriminate, and/or retaliate against Plaintiff, Defendant CHILSTROM told her that Matt, a stocker in the store, did not like her "because you are a girl." CHILSTROM also told Plaintiff, "Matt does not respect women, [he] does not respect you."

d)     To harass, discriminate, and/or retaliate against Plaintiff, Defendant CHILSTROM made other harassing, discriminatory, and/or retaliatory sex/gender and/or sexual orientation based comments in Plaintiff's presence, including without limitation: "your man is hot", and "I'm going to take your man" about other women in the store who brought their partners in. CHILSTROM also referred to his 8 year old niece as a "bitch".

e)     Plaintiff complained to Mark Olson, her Store Manager, at least 3 times between mid-April 2022 and early June 2022 that CHILSTROM's comments about women and their bodies made Plaintiff uncomfortable.

f)     Store Manager Olson was often present when these comments were made by CHILSTROM. To harass, discriminate, and/or retaliate against Plaintiff, Store Manager Olson would laugh at the comments and/or respond by saying "ugh, I know", thereby also ratifying and condoning CHILSTROM's harassment, discrimination and retaliation of Plaintiff.

g)     In or around June 2022, while Plaintiff and CHILSTROM were alone in the store, to harass, discriminate, and/or retaliate against Plaintiff, CHILSTROM verbally attacked Plaintiff, including by making the following statements to her: "you should change if you want to be liked," "you need to watch your back", "you're very overzealous and everyone sees it," and "you should no longer work in retail and get a 9 to 5 job." CHILSTROM also

42

told Plaintiff that he knew where her family lived. Plaintiff left the store shaking and crying.

h)      Plaintiff called Store Manager Mark Olson to complain about CHILSTROM's harassment, discrimination, and retaliation, and Olson told Plaintiff to make an official complaint with human resources. That same day, Plaintiff made a complaint about CHILSTROM's harassment, discrimination, and retaliation of her to J CHOO human resources employees Jessica Baviello and Amanda Ho. Plaintiff also told Baviello and Ho that she did not feel safe working with CHILSTROM unless there was someone else in the store. Plaintiff received approval from human resources, District Manager Roger Swift, and Olson to go home early. To harass, discriminate, and/or retaliate against Plaintiff, Baviello told Plaintiff "if you don't feel safe then don't go back to the store." Baviello did not offer to make any accommodations so that Plaintiff would not have to work with CHILSTROM, who was harassing, discriminating, and retaliating against her.

i)       Human Resources told Plaintiff they would contact CHILSTROM to obtain a written statement concerning the incident, but, to harass, discriminate, and/or retaliate against Plaintiff, never informed Plaintiff whether a statement was obtained or whether any investigation was undertaken.

j)      To harass, discriminate, and/or retaliate against Plaintiff, J CHOO continued to schedule her to work alone with CHILSTROM despite her complaints,  including that she did not feel safe working alone with CHILSTROM.

k)      In or around early July 2022, CHILSTROM took a customer from Plaintiff while Plaintiff was helping the customer pick up a prepaid pair of shoes. Plaintiff handed the shoes to CHILSTROM and went to the stock room to get shoes for another customer. To harass, discriminate, and/or retaliate against Plaintiff, CHILSTROM, who was irate, confronted Plaintiff in the stock room with Store Manager Olson present. CHILSTROM told Plaintiff, without limitation, "you need to stop," "you choose and pick who you want to work with, you're extremely disrespectful." CHILSTROM then said to Olson, in front of Plaintiff, "I don't fucking know her, I don't know this woman, take her."

l)      Following CHILSTROM's outburst, Plaintiff told Olson that she was going to

43

make a complaint to human resources. To harass, discriminate, and/or retaliate against Plaintiff, Store Manager Olson attempted to dissuade Plaintiff from making the complaint, saying "we don't need to take it to HR," and "stay away from HR, it does not look good for you." However, Plaintiff told Olson that she was going to complain to HR because "this is an extremely toxic environment." Store Manager Olson responded that it was not a toxic environment. To harass, discriminate, and/or retaliate against Plaintiff, Store Manager Olson told Plaintiff that CHILSTROM "has validity," that CHILSTROM "feels a certain way about you, what he said was okay, but the way he delivered it was not."

m)      Store Manager Olson told Plaintiff that her "numbers make [CHILSTROM] look bad, you need to take a step back and let others work their numbers." Store Manager Olson told Plaintiff that he was impressed by her numbers, but, to harass, discriminate, and retaliate against Plaintiff, said that "those numbers should be [CHILSTROM]'s."

n)      The next day, Plaintiff made a second complaint to human resources about CHILSTROM's harassment, discrimination, and retaliation. Plaintiff specifically told Jessica Baviello "I have a right to work without being harassed," and "you guys are not protecting your employees." Plaintiff again told Baviello that Plaintiff did not feel safe working with CHILSTROM. To harass, discriminate, and/or retaliate against Plaintiff, Baviello did not respond to these comments and took no action in response to them.

o)      Human resources told Plaintiff that they would investigate and get back to her, but to harass, discriminate, and/or retaliate against Plaintiff, no one from J CHOO ever followed up with Plaintiff.

p)      In late July 2022, Plaintiff purchased shoes from her store. She cleared the purchase with her Store Manager Olson, but while she was attempting to purchase them, she was rushed out of the store because one of her co-workers had tested positive for Covid-19 and she was sent home to isolate. Plaintiff told a co-worker that she was sending herself a link to pay for the shoes online. Plaintiff paid for the shoes the next day.

q)      Thereafter, Store Manager Olson asked Plaintiff what the link was for, and when Plaintiff told him it was for the shoes she was purchasing, Olson told her to pay right away,

**COMPLAINT FOR DAMAGES**

and she immediately complied. At least one other employee and one store manager had previously sent themselves a link to pay for shoes, and paid the next day, without any repercussions.

r)      To harass, discriminate, and/or retaliate against Plaintiff, J CHOO involved loss prevention and accused her of stealing the shoes. However, both Olson and Loss Prevention Manager Alan Mendoza told Plaintiff she would not be terminated.

s)      To harass, discriminate, and/or retaliating against Plaintiff, in or around August 18, 2022, J CHOO terminated Plaintiff's employment. Store Manager Mark Olson, District Manager Roger Swift, Jessica Baviello, and Director of Human Resources Rosa Vespia were all on the call where Plaintiff was advised by Olson that her employment was terminated effective immediately.

103.    By engaging in this conduct, Defendants violated numerous statutes, laws, and regulations, including without limitation California Gov. Code §§ 12940, et seq.

104.    As a direct result of Plaintiff engaging in legally protected conduct by complaining about and protesting against the aforesaid violations of law and/or Plaintiff's reasonable belief that laws were being violated, Defendants retaliated against Plaintiff in violation of Cal. Labor Code §1102.5 with numerous adverse employment actions, including but not limited to Defendants making demeaning, abusive, and derogatory comments and gestures, denying Plaintiff opportunities, unfairly disciplining Plaintiff, overly monitoring and scrutinizing Plaintiff, terminating Plaintiff's employment and refusing to return Plaintiff back to work. Defendants also failed to re-hire Plaintiff.

105.    When Plaintiff was subjected to the adverse employment actions identified above, Defendants were substantially motivated by Plaintiff's complaints of violations of state and/or federal law and said complaints were substantial motivating factors and/or reasons in the decision to subject Plaintiff to the aforesaid retaliatory, adverse employment actions, in violation of California Labor Code § 1102.5.

106.    At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated by California Labor Code § 1102.5 prohibited discrimination and/or

45

**COMPLAINT FOR DAMAGES**

retaliation against employees blowing the whistle about their employers' unlawful activities. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.

107.    At all times herein mentioned, the public policy of the State of California prohibits the assault and battery of another individual. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.

108.    Accordingly, the actions of Defendants, in retaliating and wrongfully terminating Plaintiff on the grounds alleged and described herein were wrongful and do not promote the welfare and well-being of the community at large.

109.    As a direct and legal result of the acts and omissions of Defendant Ambitions and DOES 1 through 100, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and/or externally, and suffered, among other things, emotional distress, including but not limited to shock, pain, discomfort and/or anxiety.

110.    As a further direct and legal result of the acts of Defendants, Plaintiff has been caused, and did suffer, and continues to suffer severe and/or permanent emotional and/or mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said disabilities is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

111.    The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 through 100, with the express knowledge, consent, and ratification of managerial agents and employees of J CHOO and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to Cal. Civil Code § 3294(a) and (b).

112.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been unable to engage fully in Plaintiff's occupation, and/or is informed and

believes, and thereon alleges, that Plaintiff may be fully and/or partially incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

113.    By the aforesaid acts and conduct of Defendants, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California <u>Civil Code</u> § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

114.    As a result of the unlawful acts of Defendants, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in Cal. <u>C.C.P.</u> § 1021.5. Plaintiff's action enforces important rights affecting the public interest by bringing forth this lawsuit to ensure Defendants refrain from unlawfully and wrongfully terminating their employees, thereby conferring a significant benefit on the general public's health and well-being as a result. The necessity and financial burden of this private enforcement, as well as the interest of justice, entitles Plaintiff to reasonable attorneys' fees and costs under Cal. <u>C.C.P.</u> § 1021.5.

115.    Plaintiff is entitled to the civil remedies provided for by Cal. <u>Labor Code</u> § 1102.5(f).

116.    Plaintiff is entitled to attorney's fees as provided for by Cal. <u>Labor Code</u> § 1102.5(j).

**IX.**

**<u>NINTH CAUSE OF ACTION</u>**

**For Retaliation and Constructive Wrongful Termination in Violation of Public Policy**

**Against Defendants J CHOO & DOES 1 Through 100, Only**

117.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

118.    Plaintiff was harassed, discriminated against, and retaliated against and wrongfully constructively terminated from Plaintiff's employment on or about August 2022, due to, among others, Plaintiff's sex/gender, sexual orientation, and/or her aforesaid legally protected activities

47

**COMPLAINT FOR DAMAGES**

(complaints/protests against the harassment, discrimination, retaliation).

119.    As such, Plaintiff was retaliated against and discharged from Plaintiff's employment for reasons that violate a public policy(s).

120.    As alleged herein, Defendants and DOES 1 through 100, and each of them, made Plaintiff's working conditions so objectively hostile that Plaintiff was forced to quit and was therefore constructively discharged from employment.

121.    Plaintiff's wrongful discharge caused and continues to cause Plaintiff harm.

122.    At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated by the California Constitution, the California Government Code §§ 12920 and 12940 et seq., was to prohibit employers from harassing, discriminating, and retaliating against and/or wrongfully terminating any individual on the grounds of their sex/gender and sexual orientation. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. The policy inures to the benefit of the public and is fundamental and substantial.

123.    At all times herein mentioned, the public policy of the State of California was to prohibit retaliation against an employee for making whistleblowing complaints. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.

124.    Defendants J CHOO and DOES 1 through 100, and each of them, violated the public policies of the State of California as set forth in Tameny v. Atlantic Richfield Co., (1980) 27 C3d 167, 172.

125.    At all times herein mentioned, the public policy of the United States of America and State of California, as codified, expressed and mandated by  42 U.S.C. §§ 2000e et seq. ("Title VII of the Civil Rights Act of 1964" or "Title VII"), 42 U.S.C. § 1981, and Article 1, § 8 of the Constitution of the State of California, as well as the Tameny case, was to prohibit employers from harassing, discriminating, and retaliating against and/or wrongfully terminating any individuals because of their sex/gender and sexual orientation, including on the grounds of their complaints of sex/gender and sexual orientation harassment and discrimination. This public policy of the United

48

**COMPLAINT FOR DAMAGES**

States of America and State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. The policy inures to the benefit of the public and is fundamental and substantial.

126.    At all times herein mentioned, the public policy of the United States of America and State of California was to prohibit the intentional infliction of emotional distress to another or opposing said unlawful practices. This public policy of the United States of America and State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.

127.    Accordingly, the actions of Defendants J CHOO and DOES 1 through 100, and each of them, in retaliating and wrongfully constructively terminating Plaintiff on the grounds alleged and described herein were wrongful and do not promote the welfare and well-being of the community at large.

128.    As a further legal result of the acts and omissions of Defendants J CHOO and DOES 1 through 100, and each of them, Plaintiff has been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and/or thereon alleges, that Plaintiff will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

129.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and/or is informed and believes, and thereon alleges, that Plaintiff may be partially and/or fully incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damages in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

130.    As a further direct and legal result of the acts of Defendants and DOES 1 through 100, and each of them, Plaintiff has been caused, and did suffer, and continues to suffer severe and/or permanent emotional and/or mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently

1    unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

2    131.    The aforementioned acts of Defendants and DOES 1 through 100, and each of them, were

3    willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and

4    conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial

5    agents and employees of Defendants J CHOO and DOES 1 through 100, and with the express

6    knowledge, consent, and ratification of managerial agents and employees of Defendants J CHOO

7    and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in

8    an amount to be determined at the time of trial pursuant to Cal. Civil Code § 3294(a) and (b).

9    132.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, and each of

10    them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California

11    Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity,

12    medical and related expenses for care and procedures both now and in the future, attorneys' fees,

13    and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to

14    amend when ascertained.

15    133.    As a result of the unlawful acts of Defendants and DOES 1 through 100, and each of them,

16    as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as

17    specifically provided in Cal. C.C.P. § 1021.5. Plaintiff's action enforces important rights affecting

18    the public interest by bringing forth this lawsuit to ensure Defendants refrain from unlawfully and

19    wrongfully terminating their employees, thereby conferring a significant benefit on the general

20    public's health and well-being as a result. The necessity and financial burden of this private

21    enforcement, as well as the interest of justice, entitles Plaintiff to reasonable attorneys' fees and

25    costs under Cal. C.C.P. § 1021.5.

23    / / /

24

25    / / /

26

27    / / /

28

**COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

25

23

24

25

26

27

28

**X.**

**TENTH CAUSE OF ACTION**

**For Intentional Infliction of Emotional Distress**

**Against All Defendants & DOES 1 Through 100, Inclusive**

134.    Plaintiff incorporates herein by reference each and every paragraph in this Complaint as though duly set forth in full herein.

135.    The conduct of Defendants and DOES 1 through 100 was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society, and intended to cause and actually did cause Plaintiff to suffer severe emotional distress.

136.    Defendants and DOES 1 through 100 intended to cause and did cause Plaintiff severe emotional distress.

137.    Plaintiff did not consent to the conduct of Defendants and DOES 1 through 100, as herein alleged and said conduct was unprivileged. The conduct of Defendants and DOES 1 through 100 caused Plaintiff to suffer severe emotional distress.

138.    At all times relevant herein, Defendant CHILSTROM, Store Manager Olson, Human Resources employee Jessica Baviello, and District Manager Roger Swift were agents/employees of Defendants J CHOO and DOES 1 through 100, and in doing the acts alleged herein, said persons were acting within the course and scope of their employment as well as in their individual capacity. As such, Defendants J CHOO and DOES 1 through 100 are also responsible for the unlawful actions of said persons.

139.    As a direct and legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and/or externally, and suffered, among other things, emotional distress, including but not limited to shock, pain, discomfort and/or anxiety.

140.    As a further legal result of the acts and omissions of Defendants and DOES 1 through 100, Plaintiff may have been forced to incur expenses for medical care, X-rays, and/or laboratory costs during the period of Plaintiff's disability, and is informed and believes, and/or thereon alleges, that Plaintiff may be in the future be forced to incur additional expenses of the same nature, all in an

amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

141.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents may have been unable to engage fully in Plaintiff's occupation, and/or is informed and believes, and thereon alleges, that Plaintiff may be partially and/or fully incapacitated and/or unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damages in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

142.    As a further direct and legal result of the acts of Defendants and DOES 1 through 100, Plaintiff has been caused, and did suffer, and continues to suffer severe and/or permanent emotional and/or mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

143.    The aforementioned acts of Defendants and DOES 1 through 100, were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants J CHOO and DOES 1 though 100, and with the express knowledge, consent, and ratification of managerial agents and employees of Defendants J CHOO and DOES 1 through 100, and each of them, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to Cal. Civil Code § 3294(a) and (b).

144.    By the aforesaid acts and conduct of Defendants and DOES 1 through 100, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

145.    As a result of the unlawful acts of Defendants and DOES 1 through 100, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in

Cal. C.C.P. § 1021.5. Plaintiff's action enforces important rights affecting the public interest by bringing forth this lawsuit to ensure Defendants refrain from intentionally inflicting emotional distress on others (employees/coworkers), thereby conferring a significant benefit on the general public's health and well-being as a result. The necessity and financial burden of this private enforcement, as well as the interest of justice, entitles Plaintiff to reasonable attorneys' fees and costs under Cal. C.C.P. § 1021.5.

146.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

WHEREFORE, PLAINTIFF MIRANDA KRAL prays for judgment against the Defendants, and each of them, as follows:

1.    For general damages in an amount within the jurisdictional limits of this Court;

2.    For special damages in an amount within the jurisdictional limits of this Court;

3.    For medical expenses and related items of expense, according to proof;

4.    For loss of earnings, according to proof;

5.    For consequential and incidental damages according to proof;

6.    For prejudgment interest according to proof;

7.    For declaratory relief against Defendants;

8.    For injunctive relief against Defendants;

9.    For damages, penalties and reasonable attorneys' fees and costs of suit as provided for by California Government Code § 12965;

10. For punitive and exemplary damages against Defendants, according to proof, as provided for by California Civil Code § 3294(a) and (b).

11. For damages, penalties and reasonable attorneys' fees and costs of suit as provided for by California Civil Code § 3333;

12. For damages, penalties and reasonable attorneys' fees and costs of suit as provided for by California Code of Civil Procedure §1021.5, according to proof;

13. For damages, penalties and reasonable attorneys' fees and costs of suit as provided for by California Labor Code § 1102.5;

**COMPLAINT FOR DAMAGES**

14. For such other and further relief as the Court may deem just and proper.

Dated: September 11, 2023                    **REISNER & KING LLP**

                                    By: _____
                                        IAN G. STERLING, ESQ.
                                        Attorneys for PLAINTIFF
                                        MIRANDA KRAL

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                          KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

June 30, 2023

Adam Reisner
15303 VENTURA BLVD STE 1260
Sherman Oaks, CA 91403

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202306-21151530
        Right to Sue: Kral / J Choo USA, Inc. et al.

Dear Adam Reisner:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

June 30, 2023

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202306-21151530
       Right to Sue: Kral / J Choo USA, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Miranda Kral                                             CRD No. 202306-21151530

                                    Complainant,

vs.

J Choo USA, Inc.
330 N. Brand Blvd. Ste. 700
Los Angeles, CA 91203

Jared Chilstrom
6600 Topanga Ave.,
Canoga Park, CA 91303

                                    Respondents

_____

**1.** Respondent **J Choo USA, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **Jared Chilstrom** individual as Co-Respondent(s).

**3**. Complainant **Miranda Kral**, resides in the City of **Sherman Oaks,** State of **CA.**

**4**. Complainant alleges that on or about **August 18, 2022**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, sexual orientation, other, sexual harassment- hostile environment, sexual harassment- quid pro quo, association with a member of a protected class.

**Complainant was discriminated against** because of complainant's sex/gender, sexual orientation, other, sexual harassment- hostile environment, sexual harassment- quid pro quo, association with a member of a protected class and as a result of the discrimination was terminated, denied hire or promotion, reprimanded, suspended, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, other, denied work opportunities or assignments, denied or forced to transfer.

-1-
*Complaint – CRD No. 202306-21151530*

Date Filed: June 30, 2023

1

2 **Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment complaint and as a result was terminated, denied hire or promotion, reprimanded,

3 suspended, demoted, asked impermissible non-job-related questions, other, denied work opportunities or assignments, denied or forced to transfer.

4

5 **Additional Complaint Details:** Ms. Kral began working at Jimmy Choo in November of

6 2021. Ms. Kral worked at Jimmy Choo's store located at 6600 Topanga Ave., Canoga Park, CA 91303. As will be discussed in further detail below, Ms. Kral has been harassed,

7 discriminated, and retaliated against and wrongfully terminated due to her sex/gender and sexual orientation.

8

9 During her tenure as a salesperson, Ms. Kral worked with Mr. Chilstrom. When Ms. Kral began her employment with Jimmy Choo, her then-manager Kristen Quattro, told Ms.

10 Kral that she had complained to Human Resources ("HR") about Mr. Chilstrom, engaging in unlawful and harassing conduct, and that he made her feel unsafe.

11 Indeed, during this time Mr. Chilstrom made numerous derogatory and inappropriate comments to Ms. Kral which were motivated by Mr. Chilstrom's animus towards women.

12 These comments included but were not limited to: "she needs a boob job," "her ass is fake," "[a woman] looks like shit," "she needs to go to my doctor," "I'm going to take your man," and

13 "your man is hot". Mr. Chilstrom also repeatedly called women "trolls" if they came into the store and did not buy something; he even had a mug that said "Troll" on it, and he would

14 refer to his own eight-year-old niece as a "bitch."

15 Additionally, during Ms. Kral's tenure Mr. Chilstrom harassed Ms. Kral because of her

16 sex/gender by telling her that Matt, a stocker, did not like Ms. Kral "because you are a girl." Mr. Chilstrom also said, "Matt does not respect women, [he] does not respect you," and flat-

17 out told Ms. Kral that he did not respect her because of her sex/gender: "I come from a Jewish household and Jewish men don't respect women." Mark Olson, one of Ms. Kral's

18 managers was present when these comments were made. Mr. Olson would laugh or say "ugh, I know", thereby ratifying and condoning Mr. Chilstrom's discrimination and

19 harassment.

20 Thereafter, in or around June 15, 2022, Ms. Kral complained to HR representatives

21 Jessica Baviello and Amanda Ho that Mr. Chilstrom had verbally attacked her by making the following statements to her, including but not limited to: "[you] should no longer work in retail

22 and get a 9-5 job," "[you're] very overzealous and everyone sees it," and "[you] should change if you want to be liked." This barrage of insults continued until Ms. Kral walked out of

23 the store and took a phone call at around 1:00 P.M. Subsequently, Ms. Kral informed HR that she did not feel safe, and she handed in a complaint letter detailing the aforementioned.

24 On or about June 24, 2022, Mr. Chilstrom, to disparage a co-employee, said to Ms.

25 Kral that a manager in Southcoast, named Leslie Stockwell "had Tourette's" and "has ticks."

26

27 *Complaint – CRD No. 202306-21151530*

Date Filed: June 30, 2023

28

After the aforementioned conversation, Ms. Kral protested to both managers Mark and Kristen.

Then, on around July 7, 2022, when Ms. Kral expressed her desire to contact HR about Mr. Chilstrom's ongoing hostility and abuse, Manager Mark Olsen told her that she should not complain to HR, "stay away from HR, it does not look good for you." This implied that if Ms. Kral made these protected complaints to the company, she would be retaliated against.

During a phone conversation on around July 14, 2022 between Ms. Kral and HR Jessica Baviello, Ms. Kral told Ms. Baviello, "I have a right to work without being harassed. You guys are not protecting your employees." Ms. Baviello did not inquire as to what harassment Ms. Kral was referring to. Ms. Kral said that she felt unsafe in her work environment. Ms. Baviello said, "if you don't feel safe, then don't go back to the store." But Ms. Baviello did not discuss transferring the offending employees to another store, or changing shifts around so that Ms. Kral would not have to work with her harassers.

Thereafter, Ms. Kral purchased shoes form her store. She cleared the purchase with her manager Mark, but while she was attempting to purchase them, she was rushed out of the store because one of the co-workers had tested positive for Covid-19. HR sent her home because Ms. Kral had come into contact with the employee who tested positive for Covid-19. Ms. Kral, since she was being sent home, told her co-worker, Adrianna, "I am sending myself a saferpay link." – meaning she was going to pay for the shoes. The link could be seen in authorized.net. It was sent and paid the next day. Afterwards, Mark asked what the link was, and when Ms. Kral said it was for the shoes she was purchasing, Mark told her that it was not a problem.

Shortly thereafter, both Loss Prevention Manager Alan Mendoza and Ms. Kral's direct manager Mark Olson told Ms. Kral that she would not be fired for the incident with her purchasing the shoes. However, Ms. Kral was wrongfully and unlawfully terminated on or around August 18, of 2022. After she was fired, Mark contacted Ms. Kral and said that he was "sorry, and it was out of his hands." The termination was obviously retaliatory.

The FEHA explicitly prohibits such harassment, discrimination, and retaliation in the workplace on account of protected classes and categories. It is an unlawful employment practice for an employer to harass, discriminate and/or retaliate against its employee because of their sex/gender. See generally California Gov. Code § 12940. Ms. Kral has suffered severe damages as a result of this discriminatory and retaliatory misconduct.

Furthermore, the extremely close temporal proximity between the numerous times that Ms. Kral informed Jimmy Choo of Mr. Chilstrom's discriminatory treatment, suggests an impermissible correlation. Rather than address the unsafe discriminatory environment that Ms. Kral was in, they blatantly allowed the discrimination to continue as they did nothing to rectify the situation. Then, when Ms. Kral unmistakably purchased shoes from the store, with approval of her direct supervisor, Jimmy Choo used this "incident" as a pretext to terminate her. There is no question that the true reason for Ms. Kral's termination is that she

Date Filed: June 30, 2023

1  repeatedly engaged in the protected activity of opposing unlawful discrimination and
2  harassment by her manger and coworkers.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-4-

*Complaint – CRD No. 202306-21151530*

27

28  Date Filed: June 30, 2023

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Adam Reisner**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On June 30, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Sherman Oaks, California**

-5-

*Complaint – CRD No. 202306-21151530*

Date Filed: June 30, 2023

CRD-ENF 80 RS (Revised 12/22)

# EXHIBIT B

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

June 30, 2023

Miranda Kral
15303 Ventura Blvd. Ste 1260
Sherman Oaks, CA 91403

RE:     **Notice of Case Closure and Right to Sue**
        CRD Matter Number: 202306-21151530
        Right to Sue: Kral / J Choo USA, Inc. et al.

Dear Miranda Kral:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective June 30, 2023 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** J CHOO USA, INC., a California Corporation;
*(AVISO AL DEMANDADO):* JARED CHILSTROM, an individual; and
DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** MIRANDA KRAL
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/12/2023 8:52 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Bolden, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER: 23STCV21828<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Ian Sterling, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Reisner & King LLP

15303 Ventura Blvd., Ste. 1260, Sherman Oaks, California 91403                    818-981-0901

DATE: 09/12/2023    David W. Slayton, Executive Officer/Clerk of Court    Clerk, by    S. Bolden    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

  under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
  ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
  ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

  ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder™

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/11/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ Y. Tarasyuk _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>23STCV21828 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Joseph  Lipner | 72 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 09/12/2023
  (Date)

David W. Slayton, Executive Officer / Clerk of Court

By Y. Tarasyuk , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| | **FILED** |
| COURTHOUSE ADDRESS:<br>**Stanley Mosk Courthouse**<br>111 North Hill Street, Los Angeles, CA 90012 | Superior Court of California<br>County of Los Angeles<br>10/03/2023 |
| PLAINTIFF:<br>Miranda Kral | David W. Slayton, Executive Officer / Clerk of Court |
| DEFENDANT:<br>J Choo USA, Inc., et al. | By: M. Rodriguez Deputy |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>23STCV21828 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 01/31/2024 | Time: 8:30 AM | Dept.: 72 |
|---|---|---|

NOTICE TO DEFENDANT: THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 10/03/2023

Judicial Officer

**CERTIFICATE OF SERVICE** Joseph Lipner / Judge

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Ian G. Sterling
15303 Ventura Blvd.
Suite 1260
Sherman Oaks, CA 91403

David W. Slayton, Executive Officer / Clerk of Court

Dated: 10/03/2023

By M. Rodriguez
Deputy Clerk

LASC LACIV 132 Rev. 01/23
For Optional Use

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>**Stanley Mosk Courthouse**<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>10/03/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ M. Rodriguez _____ Deputy |
| PLAINTIFF(S):<br>Miranda Kral | |
| DEFENDANT(S):<br>J Choo USA, Inc., et al. | |
| **ORDER TO SHOW CAUSE HEARING** | CASE NUMBER:<br>23STCV21828 |

To the party / attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on 11/13/2023 at 8:30 AM in department 72 of this court, Stanley Mosk Courthouse                                         , and show cause why sanctions should not be imposed for:

[✔]     Failure to file proof of service.

Failure to comply or appear may result in sanctions pursuant to one or more of the following: California Rules of Court, rule 2.30 and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[✔]     To avoid a mandatory appearance all required documents must be filed at least 5 days prior to the date of the hearing.

Dated: 10/03/2023

Joseph Lipner / Judge
Judicial Officer

**ORDER TO SHOW CAUSE HEARING**

Cal. Rules of Court, rule 2.30
LASC Local Rules, Chapter 7

# EXHIBIT B

SEYFARTH SHAW LLP
Dana L. Peterson (SBN 178499)
dpeterson@seyfarth.com
Elizabeth M. Levy (SBN 268926)
elevy@seyfarth.com
Heather E. Horn (SBN 318242)
hhorn@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
J CHOO USA, INC.

**Electronically FILED by**
Superior Court of California,
County of Los Angeles
10/18/2023 2:28 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| MIRANDA KRAL,<br><br>          Plaintiff,<br><br>     v.<br><br>J CHOO USA, INC., a California Corporation;<br>JARED CHILSTROM, an individual; and DOES<br>1-100, inclusive,<br><br>          Defendants. | Case No. 23STCV21828<br><br>**DEFENDANT J CHOO USA, INC.'S**<br>**ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Complaint Filed: September 11, 2023 |

Defendant J CHOO USA, INC. ("Defendant") hereby answers Plaintiff MIRANDA KRAL'S ("Plaintiff") Complaint as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies generally each allegation and each purported cause of action in the Complaint, and without limiting the generality of the foregoing, deny that Plaintiff has been damaged in any amount, or at all, by reason of any acts or omissions of Defendant.

## AFFIRMATIVE DEFENSES

In further answer to the Complaint, and as separate and distinct affirmative and other defenses, Defendant alleges as follows, without assuming the burden of proof on any defense on which they would not otherwise have the burden of proof by operation of law:

## FIRST DEFENSE

### (Failure to State a Cause of Action)

1. Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action against Defendant.

## SECOND DEFENSE

### (Statute of Limitations)

2. Plaintiff's claims, in whole or in part, are barred by the applicable statutes of limitations, including, but not limited to, California Code of Civil Procedure §§ 338, 340 and 343; and California Government Code §§ 12960 et seq.

## THIRD DEFENSE

### (Estoppel)

3. Because of Plaintiff's own acts or omissions, Plaintiff is barred by equitable doctrine of estoppel from maintaining this action or pursuing any cause of action alleged in the Complaint.

## FOURTH DEFENSE

### (Unclean Hands)

4. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

2

305263762v.1

## FIFTH DEFENSE

### (Waiver)

5.      Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH DEFENSE

### (Laches)

6.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches because Plaintiff delayed unreasonably in bringing her claim.

## SEVENTH DEFENSE

### (Conformance with Existing Laws and Regulations)

7.      All conduct and activities of Defendant alleged in the Complaint conformed to statutes, government regulations and industry standards based upon the state of knowledge existing at the time(s) alleged in the Complaint. As a consequence, some or all of Plaintiff's claims are barred in full, or in part, based on Defendant's good faith belief that it had good cause and/or a legitimate business reason to act as it did and did not directly or indirectly perform any acts that would constitute a violation of any of Plaintiff's rights.

## EIGHTH DEFENSE

### (Privileged/Justified Conduct)

8.      Any and all conduct of which Plaintiff complains, was at all times privileged and/or justified under California law, undertaken in good faith in just and proper exercise of managerial discretion and business judgment for legitimate, non-retaliatory business reasons completely unrelated to any protected classification, and was not based upon a violation of public policy or other factors protected by law.

## NINTH DEFENSE

### (Failure to Exhaust Administrative Remedies)

9.      Plaintiff's claims are barred to the extent that she has failed to exhaust administrative remedies pursuant to California Government Code sections 12960, 12965 and all other applicable laws.

3

305263762v.1

1

## TENTH DEFENSE

2

### (After–Acquired Evidence)

3    10.    The doctrine of after-acquired evidence bars Plaintiff's claims to the extent she engaged

4  in any fraud, misconduct, or action of which Defendant was unaware until after Plaintiff filed suit, and

5  which, if known, would have caused Plaintiff to be terminated or not hired in the first place.

6

## ELEVENTH DEFENSE

7

### (Workers' Compensation Exclusivity)

8    11.    Plaintiff's claims for certain damages are preempted and barred by the exclusive

9  remedies of the California Workers' Compensation Act, California Labor Code section 3200 *et seq.*,

10  inasmuch as they involve an employer/employee relationship subject to workers' compensation

11  coverage, conduct of Plaintiff undertaken in the course and scope of her employment with Defendant,

12  and injuries alleged by Plaintiff to have been proximately caused by her employment with Defendant.

13

## TWELFTH DEFENSE

14

### (Offset)

15    12.    Defendant is entitled to offset for any monies received by Plaintiff from any source in

16  compensation for her alleged economic damages and noneconomic damages under the common-law

17  doctrine of offset and under the doctrine prohibiting double recovery set forth in *Witt v. Jackson*, 57 Cal.

18  2d 57 (1961) and its progeny.

19

## THIRTEENTH DEFENSE

20

### (Reasonable Care)

21    13.    Plaintiff's claims are barred and/or recovery is precluded because Defendant exercised

22  reasonable care to prevent and correct promptly any alleged discriminatory, harassing, or retaliatory

23  behavior.

24

## FOURTEENTH DEFENSE

25

### (Failure to Mitigate)

26    14.    Plaintiff's damages, if any, must be reduced by the extent to which either Plaintiff has

27  failed to mitigate her alleged damages by finding comparable employment or failed to take advantage of

28  the opportunities to find comparable employment.

4

305263762v.1

## **FIFTEENTH DEFENSE**

### **(Avoidable Consequences)**

15.     If any loss, injury, damage or detriment occurred as alleged in the Complaint, some or all of such loss would have been avoided if Plaintiff had made reasonable use of the preventive and corrective measures Defendant made available to Plaintiff during her employment or had exercised due care and avoided such alleged harm. Accordingly, Plaintiff's recovery from Defendant, if any, is barred or, in the alternative, reduced by the amount of damages that Plaintiff could have reasonably avoided.

## **SIXTEENTH DEFENSE**

### **(Outside Course and Scope of Employment)**

16.     To the extent any of Defendant's employees or agents were negligent or engaged in unlawful discriminatory, retaliatory, harassing, or other unlawful behavior toward Plaintiff, Defendant is not liable for any such negligence, discrimination, retaliation, or harassment or Plaintiff's damages must be reduced, because those employees or agents acted outside the course and scope of employment with Defendant.

## **SEVENTEENTH DEFENSE**

### **(Mixed Motive)**

17.     Even if Plaintiff should prove that her alleged protected status was a substantial factor motivating the challenged actions, which Defendant denies, the same actions would have been taken based on legitimate, non-discriminatory, non-retaliatory considerations

## **EIGHTEENTH DEFENSE**

### **(Kolstad Defense)**

18.     Plaintiff Complaint, and each of the causes of action therein, fails to state facts sufficient to entitle Plaintiff to an award of punitive damages. Further, Plaintiff may not recover punitive damages against Defendant for the employment decisions of its agent(s) to the extent that those decisions were contrary to policies Defendant has instituted against wrongful conduct and/or the conduct was outside the course and scope of their employment.

305263762v.1

## NINETEENTH DEFENSE

### (Constitutional Limit on Punitive Damages)

19.    Although Defendant denies that it had committed or had responsibility for any act that could support the recovery of punitive damages in this lawsuit, if and to the extent any such act or responsibility is found, recovery of punitive damages against Defendant is unconstitutional under numerous provisions of the U.S. Constitution and the California Constitution, including the excessive fines clause of the Eighth Amendment, the due process clauses of the Fifth Amendment and Section 1 of the Fourteenth Amendment, the self-incrimination clause of the Fifth Amendment, and other provisions of the United States Constitution, and the excessive fines clause of Section 17 of Article I, the due process clause of Section 7 of Article I, the self-incrimination clause of Section 15 of Article I, and other provisions of the California Constitution.

## TWENTIETH DEFENSE

### (Legitimate and Nondiscriminatory/Non-Retaliatory Business Reason for Conduct)

20.    Plaintiff's claims are barred in whole or in part because the alleged conduct of which Plaintiff complains was not based on an alleged protected characteristic, and was not in retaliation for Plaintiff's exercise of any statutory, constitutional, or common law rights, but was based on one or more legitimate, nondiscriminatory and/or non-retaliatory business reasons.

## TWENTY-FIRST DEFENSE

### (Plaintiff's Failure to Take Advantage of Preventative Opportunities)

21.    Plaintiff's claims are barred in whole or in part because Plaintiff failed to take advantage of any preventative or corrective opportunities provided by Defendant. Plaintiff's damages are capped/cut-off because had Plaintiff notified Defendant in a timely manner, prompt remedial actions would have been taken and Plaintiff would not have suffered damages.

## TWENTY-SECOND DEFENSE

### (No Knowledge)

22.    Plaintiff's claims are barred because Defendant had no knowledge of any inappropriate, unwelcome, harmful, or unlawful conduct. Further, there was no basis for Defendant to believe that Plaintiff suffered from any inappropriate, unwelcome harmful, or unlawful conduct.

6

305263762v.1

## TWENTY-THIRD DEFENSE

### (Pre-existing Conditions)

23.     To the extent Plaintiff suffered any symptoms of emotional distress or injury, they were the result of a pre-existing psychological disorder or alternative concurrent cause, and not the result of any act or omission of Defendant.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL AFFIRMATIVE DEFENSES

24.     Defendant presently has insufficient information or knowledge upon which to form a belief as to whether it may have additional, yet un-asserted, affirmative defenses. Defendant therefore reserves the right to assert additional affirmative defenses in the event additional discovery and/or investigation indicate it would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully prays for judgment as follows:

1.     That Plaintiff take nothing by way of her Complaint;

2.     That the Complaint be dismissed in its entirety with prejudice;

4.     That Plaintiff be denied each and every demand and prayer for relief contained in the Complaint, including, but not limited to, compensatory and punitive damages as well as attorneys' fees and costs of suit;

5.     That judgment be entered in favor of Defendant and against Plaintiff;

6.     That Defendant be awarded the costs of suit herein incurred, including reasonable attorneys' fees; and

7.     That Defendant be awarded such other further relief as this Court may deem just, proper and equitable.

7

305263762v.1

DATED: October 18, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: *Heather E. Horn*

Dana L. Peterson
Elizabeth M. Levy
Heather E. Horn
Attorneys for Defendant
J CHOO USA, INC.

8

1

## PROOF OF SERVICE

2  STATE OF CALIFORNIA              )
                                   )  SS
3  COUNTY OF LOS ANGELES           )

4          I am a resident of the State of California, over the age of eighteen years, and not a party to the
   within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles, California
5  90067-3021. On October 18, 2023, I served the within document(s):

6          **J CHOO USA, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT**

7

8  ☒  **(BY MAIL)** by placing the document(s) listed above in a sealed envelope with postage thereon
      fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below. I
      am readily familiar with the firm's practice of collection and processing correspondence for
9     mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day
      with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion
10    of the party served, service is presumed invalid if postal cancellation date or postage meter date
      is more than one day after date of deposit for mailing in affidavit.

11

12 ☐  **(BY OVERNIGHT MAIL)** by placing the document(s) listed above in a sealed envelope or
      package provided by an overnight delivery carrier with postage paid on account and deposited
      for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

13

14 ☐  **(BY ELECTRONIC MAIL)** by transmitting the document(s) listed above, electronically, via
      the e-mail addresses set forth below.

15      Adam Reisner, Esq.                     Attorneys for Plaintiff Miranda Kral
        Tessa King, Esq.
16      Ian G. Sterling, Esq.
        15303 Ventura Blvd., Suite 1260
17      Sherman Oaks, CA 91403
        Telephone: (818) 981-0901
18      Fax: (818) 981-0902

19

20          I declare under penalty of perjury under the laws of the State of California that the above is true
   and correct.

21          Executed on October 18, 2023, at Los Angeles, California.

22

23                                                    _____
24                                                        Dana M. Hass

25

26

27

28

---

PROOF OF SERVICE

# EXHIBIT C

1  | SEYFARTH SHAW LLP
   | Dana L. Peterson (SBN 178499)
2  | dpeterson@seyfarth.com
   | Elizabeth M. Levy (SBN 268926)
3  | elevy@seyfarth.com
   | Heather E. Horn (SBN 318242)
4  | hhorn@seyfarth.com
   | 2029 Century Park East, Suite 3500
5  | Los Angeles, California 90067-3021
   | Telephone:  (310) 277-7200
6  | Facsimile:   (310) 201-5219

7  | Attorneys for Defendant
   | J CHOO USA, INC.

8

9

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF LOS ANGELES

12

13 | MIRANDA KRAL,                          Case No. 23STCV21828

14 |              Plaintiff,               **DEFENDANT J CHOO USA, INC.'S
   |                                       NOTICE TO STATE COURT AND TO**
15 |      v.                               **ADVERSE PARTY OF REMOVAL TO
   |                                       FEDERAL COURT**
16 | J CHOO USA, INC., a California Corporation;
   | JARED CHILSTROM, an individual; and DOES
17 | 1-100, inclusive,
   |                                       Complaint Filed:  September 11, 2023
18 |              Defendants.

19

20

21

22

23

24

25

26

27

28

**TO THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 20, 2023, Defendant J CHOO USA, INC. filed with the United States District Court for the Central District of California, a Notice of Removal of the above-captioned action from the Superior Court of the State of California for the County of Los Angeles. Attached hereto as **Exhibit 1** is a true and correct copy of that Notice of Removal, without the exhibits.

The Superior Court of the State of California for the County of Los Angeles is hereby advised to proceed no further with this matter unless and until the case is remanded.

DATED: October 20, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: _____

Dana L. Peterson
Elizabeth M. Levy
Heather E. Horn
Attorneys for Defendant
J CHOO USA, INC.

2

305584971v.3

# EXHIBIT D



**1 OF 1 RECORD(S)**

# SmartLinx®Person Report

**Report Created:** 10-04-2023 8:03 PM EST | FOR INFORMATIONAL PURPOSES ONLY | Copyright © 2023 LexisNexis, All rights reserved.

**Report created for:**Seyfarth Shaw LLP

## Person Summary

| Name | Address | County | Phone |
|------|---------|--------|-------|
| Kral, Miranda Nicole | Canyon Country, CA 91351-5542 | Los Angeles | |

| LexID | SSN | DOB | Email |
|-------|-----|-----|-------|
| | | . | |
| | | (Female) | |

## At a Glance

| Real Property | 0 | Criminal/Arrest | 0 |
|---------------|---|-----------------|---|
| Personal Property | 0 | Bankruptcy | 0 |
| Professional Licenses | 0 | Judgments/Liens | 0 |
| Business Connections | 0 | Foreclosure/Notice of Default | 0 |

## Name Variations, SSN Summary and DOBs

| Name Variations | SSN Summary | Reported DOBs |
|-----------------|-------------|---------------|
| Kral, Miranda Nicole | Issued in California | |
| | Issued in Texas | |

## Physical Description

## Address Summary (1 current, 3 prior)

| No. | Address | Status | To-From | Phone |
|-----|---------|--------|---------|-------|
| 1. | Canyon Country, CA 91351-5542 Los Angeles County (Residential) | Current | 05/2020 - 07/2023 (Current Residence) | |

**Possible Household Members**

Kral, Marvina R

Kral, Matthew R

**Neighborhood Profile**

# EXHIBIT E

HOEPER v. CITY AND COUNTY OF SAN FRANCISCO, 1703270032 (2017)

JVR No. 1703270032, 2017 WL 1136098 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, San Francisco County, California.

## HOEPER v. CITY AND COUNTY OF SAN FRANCISCO

CGC-15-543553

DATE OF INCIDENT: January 07, 2014
DATE OF FILING: January 07, 2015
DATE OF TRIAL/SETTLEMENT: March 17, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $2,029,357**

**Related Court Documents:**
Defendant's memorandum in support of summary judgment motion: 2016 WL 8417259

Plaintiff's memorandum opposing defendant's motion for summary judgment: 2016 WL 8417260

Order denying defendant's motion for summary judgment: 2016 WL 8411837

Plaintiff's trial brief: 2017 WL 839032

Defendant's trial brief: 2017 WL 839034

Verdict: 2017 WL 1080630

**EXPERT-WITNESSES:**
Plaintiff:
Economist: Allman, Philip, Ph.D., San Francisco, CA
Defendant:
Economist: Cohen, Mark, Udinsky Group, Berkeley, CA
**ATTORNEY:**
Plaintiff:
Therese Y. Cannata, Cannata, O'Toole, Fickes & Almazan L.L.P., San Francisco, CA
Karl Olson, Ram, Olson, Cereghino & Kopczynski L.L.P., San Francisco, CA
Defendant:
John W. Keker, Keker, Van Nest & Peters L.L.P., San Francisco, CA
Susan J. Harriman, Keker, Van Nest & Peters L.L.P., San Francisco, CA
Jennifer A. Huber, Keker, Van Nest & Peters L.L.P., San Francisco, CA

JUDGE: Lynn O'Malley-Taylor

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California

COUNTY: San Francisco

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

General Occupation: Attorney

**DEFENDANT:**
Sex: O

Organization Type: City and County of San Francisco

**DAMAGES:**
Compensatory Pain & Suffering: $1,291,409

Compensatory Past Wages: $601,630

Compensatory Future Wages: $136,318

Total Compensatory Award: $2,029,357

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: true

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: true

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State Statute


**Primary General Statute**
**Primary Name: Whistleblower**
Primary General Statute Discrimination: false

Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: **0**


**FACTS:**

Case 2:23-cv-08845-MCS-PVC    Document 1-1    Filed 10/20/23    Page 93 of 149    Page ID #:122

Joanne Hoeper, a former Chief Trial Deputy, brought this action against the City and County of San Francisco for Whistleblower retaliation, in violation of Cal. Lab. Code Sec. 1102.5 and Cal Gov't Code Sec. 12653. The plaintiff claimed in December 2011, an FBI agent gave her a tip about a possible fraudulent scheme, which involved payments by the defendant's claims bureau to property owners and plumbing companies to replace sewer lines purportedly damaged by the roots of city-owned trees. Hoeper asserted that she began an investigation which discovered that the city had paid out over $20 million in suspect claims, and that the claims bureau's assistant chief had illegally approved claims in which he or his family members had a financial interest. The plaintiff asserted that she first reported the fraudulent scheme during mid-April 2012 during a meeting with the City Attorney and the Managing City Attorney, and later provided a detailed report of her findings. She said the city attorney then began planning, without her knowledge, to remove her as Chief Trial Deputy, and transfer her to the San Francisco District Attorney's Office, and she was transferred in July 2012 without first arranging for a replacement. Hoeper argued that she was fired one day after the City Attorney was re-elected to a new term, and this was in retaliation for engaging in protected activity. The defendant denied the allegations and claimed that it terminated Hoeper for legitimate, non-retaliatory reasons, that the city attorney had already decided to remove her prior to the report about allegedly improper sewer claims because he had lost confidence in her judgment and her management of the trial team. The defendant argued that the City Attorney was concerned about the plaintiff's failure to litigate cases in a cost-effective manner, her inability to conduct proper cost-benefit analyses about settlement decisions, and her failure to keep him informed about the city's liability and exposure in significant cases until just before trial. It claimed that the city attorney attempted to address the issues with the plaintiff's performance by splitting the trial team and taking away responsibility for the most complex cases from the plaintiff. The defendant asserted that the City Attorney had begun searching for plaintiff's replacement during 2010, and spoke to fourteen candidates through February 2012. It claimed that the city attorney specifically created a temporary transfer position for Hoeper at the District Attorney's office to allow her to work until she turned 60 and reached 20 years of service. The jury found for the plaintiff and awarded her $601,630 in past lost earnings, $136,318 in future lost earnings, and $1,291,409 for emotional distress, mental anguish and humiliation.

Jury Verdict Research
COURT: Superior

---

End of Document                                               © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1706150032, 2017 WL 2617753 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Sonoma County, California.

## SARGENT v. BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY; DAWSON

SCV255399

DATE OF FILING: May 05, 2016
DATE OF TRIAL/SETTLEMENT: March 15, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $387,895**

**Related Court Documents:**
Plaintiff's third amended complaint: 2015 WL 13388024

Plaintiff's trial brief: 2016 WL 9108349

Verdict form: 2017 WL 2463698

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Dustin L. Collier, Collier Law Firm, San Francisco, CA
Joshua Socks, Collier Law Firm, San Francisco, CA
VaLinda G. Kyrias, Law Office of VaLinda Kyrias, Petaluma, CA
Defendant:
Daralyn J. Durie, Durie Tangri L.L.P., San Francisco, CA
Sonali D. Maitra, Durie Tangri L.L.P., San Francisco, CA
Andrew L. Perito, Durie Tangri L.L.P., San Francisco, CA
Tim C. Saulsbury, Durie Tangri L.L.P., San Francisco, CA
William C. Hsu, California State University Office of the General Counsel, Long Beach, CA
Maria Lampasona, Lombardi, Loper & Conant L.L.P., Oakland, CA
Alexei Offil-Klein, Lombardi, Loper & Conant L.L.P., Oakland, CA
GayLynn K. Conant, Lombardi, Loper & Conant L.L.P., Oakland, CA

JUDGE: Nancy C. Shaffer

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Sonoma

**SUMMARY**
**PLAINTIFF:**
Sex: M

SARGENT V. BOARD OF TRUSTEES OF CALIFORNIA..., 1706150032...

Age: Adult

General Occupation: Professional

**DEFENDANT:**

Sex: O

Organization Type: Board of Trustees of California State University

Sex: M

Age: Adult

General Occupation: Middle Manager

Organization Type: Dawson

**DAMAGES:**

Compensatory Pain & Suffering: $116,000

Compensatory Other: $271,895

Total Compensatory Award: $387,895

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: true

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: true

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: false


**Entity Type: Public Educational Institution**
**STATUTES**
**Primary Specific Statute**
Primary Name: General


**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State Statute


**General Statute: Whistleblower**
General Statute Discrimination: false

Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

Thomas R. Sargent sued the Board of Trustees of the California State University (CSU) and his former supervisor, Craig Dawson for whistleblower retaliation claims under Cal. Lab. Code Sec. 1102.5, Cal. Lab. Code Sec. 6310, and Lab. Code Sec. 232.5(c). Sargent also brought OSHA claims against CSU for violating Cal. Lab. Code Secs. 6400-6404, 6406, 6407(a) and 6401.7(b). The plaintiff, employed as an Environmental Health and Safety Specialist, claimed he was responsible for ensuring compliance with state and federal safety requirements, identifying and making recommendations to fix unsafe working conditions, and interacting with or reporting incidents to various outside governmental agencies. Sargent asserted that in May 2012, he found a chalky substance on the room of a school building, which tested positive for lead, indicating the lead-based paint used on the building many years before was chipping and flaking, leaving behind a residue. The plaintiff said he objected to a facilities department plan to use a leaf blower to clear the lead dust and debris in preparation for a re-roofing project. He asserted that Dawson met with him and told him his regulatory email would kill the project with costs, and ordered a maintenance mechanic to clear the lead-contaminated substance from the roof gutters with a leaf blower, and then disperse the debris over a wider field. Sargent claimed that he then collected samples from foliage and grounds around the building that revealed lead concentrations seven times greater than the hazardous waste limits set by California. Sargent said he continued to object to unsafe practices, which eventually resulted in complaints and workers' compensation claims by employees' union members, and resulted in a Cal/OSHA citation to the school. Sargent asserted that he filed a complaint that Dawson allegedly engaged in improper governmental activity by performing unlicensed asbestos abatement work at two private residences, but after his complaints, CSU sent university police to surveil and intimidate him. He claimed Dawson ordered him not to release further information about the lead contamination outside his department, but he continued to make protected disclosures to government agencies. He alleged that Dawson threatened to take away his alternative work schedule, and prohibited him from taking any further samples of suspected hazardous materials without express prior approval from him. He claimed in retaliation Dawson ordered him to move more than 4,000 pounds of sewage-contaminated debris to a truck by hand, that the retaliation continued in a similar fashion over various environmental quality issues, and he was placed on a performance improvement plan, given unsatisfactory performance reviews and suspended, but after he took a leave of absence, he decided not to return to work. The defendants denied liability and argued that Sargent resigned after years of conflict with Dawson, and that he was wrong about the health and safety issues. A jury found in favor of Sargent on his whistleblower retaliation claim, awarding him $152,980 in past economic damages, $118,915 in future economic damages, $18,00 for mental suffering, $62,000 for inconvenience, and $18,000 for anxiety and $18,000 for emotional distress. The jury found for the plaintiff on several of his PAGA OSHA claims, but damages were not determined on the verdict form.

Jury Verdict Research
COURT: Superior

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1612050044, 2016 WL 7094518 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Sacramento County, California.

# CARROLL v. ARMSTRONG; POPE; STATE OF CALIFORNIA COMMISSION ON TEACHER CREDENTIALING

34-2012-00135527-CU-OE-GDS

DATE OF FILING: November 14, 2012
DATE OF TRIAL/SETTLEMENT: August 10, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $3,064,528**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's complaint: 2012 WL 12862565

Plaintiff's trial brief: 2016 WL 4367485

Defendant's trial brief: 2016 WL 4367480

Judgment: 2016 WL 5935601

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Dan Siegel, Siegel & Yee, Oakland, CA
Plaintiff: Jalle Dafa, Siegel & Yee, Oakland, CA
Defendant: Kristin M. Daily, Office of the Attorney General, Sacramento, CA
Defendant: Jerry Deschler, Office of the Attorney General, Sacramento, CA
Defendant: Susan E. Slager, Office of the Attorney General, Sacramento, CA
Defendant: Chris A. Knudsen, Office of the Attorney General, San Diego, CA

JUDGE: Russell L. Hom

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Sacramento

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

**DEFENDANT:**

Sex: N

Organization Type: Pope

Sex: N

Organization Type: Armstrong

Sex: O

Organization Type: State of California Commission on Teacher Credentialing

**DAMAGES:**

Compensatory Pain & Suffering: $750,000

Compensatory Past Wages: $481,225

Compensatory Future Wages: $932,200

Compensatory Other: $681,103

Total Compensatory Award: $2,844,528

Punitive Damages: $220,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State Statute

CARROLL V. ARMSTRONG; POPE; STATE OF..., JVR No. 1912050044...

**Primary General Statute**
**Primary Name: Whistleblower**
Primary General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

Kathleen Carroll, an attorney, sued Mary Armstrong, Lee Pope and the State of California Commission on Teacher Credentialing for violations of the California Whistleblower Protection Act, Cal. Gov't Code Sec. 8547.8(c), pursuant to Cal. Lab. Code Sec. 1102.5. The plaintiff, who worked as staff counsel, claimed her supervisors, Lee and Armstrong, reported a backlog of disciplinary allegations against California public school teachers when Armstrong reported to the Commission that there were few backlogs, but this was after an employee had recently expressed concern about the large backlogs. Carroll asserted that she believed the backlogs violated the California Education Code, the Americans with Disabilities Act, and the 14th Amendment of the United State Constitution. The plaintiff alleged that about one month after she reported the backlog to a whistleblower hotline, she was questioned by an investigator, hired by the Commission, and received a warning from Human Resources after she refused to continue participating because the investigator was antagonistic and accusatory, and repeatedly rephrased her answers incorrectly. Carroll claimed she provided additional information about Armstrong's and Pope's conduct for which she believed violated various laws during a subsequent audit investigation, but during the audit she was denied a raise, and was placed on leave. She argued that the defendants eventually terminated her employment for fabricated reasons following an investigation by Pope. According to Carroll, the audit report eventually found the Commission had been grossly mismanaged, neglected cases of misconduct, and led to the resignation of General Counsel Armstrong and the Executive Director. The defendants denied the allegations and contended the plaintiff's employment was terminated for valid reasons, including incompetency, inefficiency, inexcusable neglect of duty, insubordination, dishonesty, discourteous treatment of the public or other employees, willful disobedience, and other failures of good behavior and unlawful harassment. The defendant denied the plaintiff made a protected disclosure, and denied any causal nexus between any purported disclosure and her termination. A jury found for the plaintiff and awarded her $481,225 for past lost earnings, $932,200 for future lost earnings, $681,103 for future mention plan benefits, and $750,000 for emotional distress, pain and suffering. The jury also awarded Carroll $90,000 in punitive damages against Armstrong, and $130,000 punitive damages against Pope.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                                                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1703300002, 2016 WL 8649664 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## HAWKINS v. CITY OF LOS ANGELES

BC541066

DATE OF FILING: April 01, 2014
DATE OF TRIAL/SETTLEMENT: June 17, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $427,162**

**Related Court Documents:**
Plaintiff Hawkins' first amended complaint: 2014 WL 12669302

Verdict form (Hawkins): 2016 WL 8446427

Verdict form (Kim): 2016 WL 8446424

Judgment on special verdict (Hawkins): 2016 WL 8452870

First amended ruling and order on defendant's motion for judgment notwithstanding the verdict: 2016 WL 8452866

First amended ruling and order on defendant's motion for a new trial: 2016 WL 8452869

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
David P. Myers, The Myers Law Group A.P.C., Rancho Cucamonga, CA
Doug Smith, The Myers Law Group A.P.C., Rancho Cucamonga, CA
Defendant:
Shanise Black, Office of the City Attorney, Los Angeles, CA
Dennis Kong, Office of the City Attorney, Los Angeles, CA

JUDGE: Ernest M. Hiroshige

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Todd Hawkins: M

Age: Adult

General Occupation: Professional

Sex: Hyung Kim: M

Age: Adult

General Occupation: Professional

**DEFENDANT:**
Sex: O

Organization Type: City of Los Angeles

**DAMAGES:**
Compensatory Pain & Suffering: Todd Hawkins: $150,000

Compensatory Other: Todd Hawkins: $88,531

Total Compensatory Award: Todd Hawkins: $238,531

Compensatory Pain & Suffering: Hyung Kim: $100,000

Compensatory Other: Hyung Kim: $88,631

Total Compensatory Award: Hyung Kim: $188,631

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: General


**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State


**General Statute: Race/Color Discrimination**
General Statute Discrimination: true

Comparative Negligence Percentage: **0**

**FACTS:**

Todd Hawkins and Hyung Kim, former Administrative Hearing Officers, sued the City of Los Angeles for retaliation, under Labor Code Sec. 1102.5(b). Hawkins, an African-American, also brought a claim under Govt. Code Sec. 12940(h) for retaliation based on race. The plaintiffs claimed they engaged in protected activity when they disclosed that they were allegedly being pressured by supervisors to change certain decisions on parking citations in favor of the City, in violation of California Vehicle Code Sec. 40215(c)(3) and the Bane Act, Civil Code Sec. 52.1. The plaintiffs argued that when they complained about allegedly being coerced into depriving motorists of their procedural due process rights, they spoke out as a matter of public concern as citizens, and not as part of their official duties, pursuant to 42 U.S.C.A. Sec. 1983. However, the plaintiffs claimed in retaliation, they were disciplined, and then terminated. Hawkins also claimed he was retaliated against for reporting discriminatory and harassing statements made to him by a supervisor, based on his race. The City denied liability and contended that the plaintiffs failed to prove they engaged in protected activity. The City argued that the plaintiffs were discharged for legitimate, independent reasons, that no law was violated because the alleged activity complained of concerned written City procedures, and that any changes to decisions were made to correct clerical mistakes. The jury found for the plaintiffs. Hawkins was awarded $88,531 in economic damages and $150,000 in non-economic damages. The court later awarded Hawkins an additional $33,952 in costs. The jury awarded Kim $88,631 in economic damages and $100,000 in non-economic damages, but found for the City on Kim's Sec. 1983 claim. The City's motion for judgment not withstanding the verdict or a new trial was denied. This case was consolidated with docket number BC543766.

Jury Verdict Research
COURT: Superior

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 2306080040, 2022 WL 20306677 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## YOUNG v. DEPT. OF PUBLIC SOCIAL SERVS.

BC609911

DATE OF TRIAL/SETTLEMENT: October 26, 2022

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $3,500,000**

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Angel J. Horacek, Law Offices of Angel J. Horacek PC, Culver City, CA
Defendant:
David S. Miller, Martin & Martin LLP, Los Angeles, CA
Renee R. Rubin, Martin & Martin LLP, Los Angeles, CA
Janet A. Ariza, Martin & Martin LLP, Los Angeles, CA

JUDGE: Jon R. Takasugi

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

**DEFENDANT:**
Sex: O

Organization Type: Dept. of Public Social Servs.

**DAMAGES:**
Compensatory Pain & Suffering: $2,526,490

Compensatory Other: $973,510

Total Compensatory Award: $3,500,000

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: true

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: true

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: false

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: true

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: false


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: General


**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false


Specific Statute: State Statute


**General Statute: Whistleblower**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**
Plaintiff Lorna Young said she was **employed** as an eligibility worker for the city with defendant Department of Public Social
Services (DPSS). The plaintiff reportedly complained that the bilingual unit, established by the former director of the defendant
facility she reported to, resulted in the racial segregation of Latino and Black **employees** and an uneven distribution of work that
distributed more work to Black **employees**, constituting racial discrimination. The new director that took over for the former
director apparently refused to desegregate the unit.

The plaintiff reportedly met with a group of union members and others and engaged in a campaign against the new director, by
which **employees** and others would present the new director with a list of violations. The new director refused to allow them to
present her with the petition when they arrived at her office and was struck by a door handle. The new director reportedly said
the plaintiff struck her and the plaintiff denied it, but the defendant imposed a 30-day suspension without pay on the plaintiff.

Following her suspension, the defendant reportedly transferred the plaintiff to a different facility, where she was subjected to
a hostile work environment and treated differently than other **employees** by her supervisors. Specifically, the plaintiff alleged
the defendant's facility failed to provide her a security clearance to perform her job, forced her to sit directly under an HVAC
vent, failed to provide her with a work station that had been ergonomically set up according to her work restrictions, and denied
her ability to take protected **family medical leave** to care for her ill father. The plaintiff claimed she was experiencing work-
related stress due to the environment and was constructively terminated. The defendant apparently failed to reinstate her and
failed to timely produce her personnel file.

The plaintiff asserted claims for retaliation in violation of the Fair **Employment** and Housing Act (FEHA) and whistleblower
retaliation in violation of Sec. 1102.5 of the California Labor Code.

The plaintiff sought damages, reportedly including $1,160,595 in economic losses.

The defendant denied liability, contending that the alleged adverse **employment** actions taken were made following standard
policies and practices and had nothing to do with the plaintiff's complaints. The defendant said the plaintiff did not act

Case 2:23-cv-08845-MCS-PVC   Document 1-1   Filed 10/20/23   Page 109 of 149   Page ID #:138

appropriately and did not act in accordance with county policies and procedures when she was engaging in the campaign against the defendant's director, and that her behavior did not constitute a protected activity.

Jury Verdict Research
COURT: Superior

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT F

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**
Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General;
Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill
**ATTORNEYS:**
Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S.
Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999
$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined
to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman.
Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless
of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved
an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart
Cooper's president, without warning and his compensation package was changed. His compensation change converted him to
100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never
forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in
order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month
period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to
other sales employees, plaintiff claimed.

In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation
package.

In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and
Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff
was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."

Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful
retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and
harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and
waiting time penalties.

**CLAIMED INJURIES**

According to court records:
Emotional distress.

**CLAIMED DAMAGES**

According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed Aug. 12, 2011.

Case 2:23-cv-08845-MCS-PVC    Document 1-1    Filed 10/20/23    Page 113 of 149   Page
ID #:142

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335

DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

**DEFENDANT:**

Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**

Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State


**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

**General Statute: Retaliation**

General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.

Jury Verdict Research
COURT: Superior

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940

DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true

Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

ABOULAFIA V. GACN INC. D/B/A CABLE'S RESTAURANT,..., 2013 WL 1403200023 (2013)

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.

Jury Verdict Research
COURT: Superior

---

End of Document                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

# Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**

Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee
**ATTORNEYS:**

Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.
Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999

Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.

Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.

Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:

Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1105250063, 2011 WL 3293268 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

# WELCH v. IVY HILL CORP.

BC414667

DATE OF TRIAL: March 08, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $1,270,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Carney R. Shegerian, Santa Monica, CA
Defendant: Kelly O. Scott, Beverly Hills, CA
Karina B. Sterman, Beverly Hills, CA
Jennifer S. Grock, Beverly Hills, CA

JUDGE: Not Available

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 62

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ivy Hill Corp.

Policy Limit:

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $1,270,000

Other Compensatory Award: $0

Total Compensatory Award: $1,270,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0

**FACTS:**
A 62-year-old former account executive sued the defendant company claiming age discrimination in violation of state law. The plaintiff alleged that the defendant wrongfully terminated her due to her age, that her most profitable accounts were taken

rom her, and that she was harassed by her supervisor. The defendant denied the allegations and claimed that the plaintiff was terminated due to a shutdown after the company was sold, and that it was the decision of the acquiring company as to whom it would hire. The defendant further contended that the plaintiff's most profitable account was taken from her t the request of the client.

Jury Verdict Research
COURT: Superior

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

**Superior Court, Orange County, California.**

# LIEMANDT v. MEGA RV CORP.

30-2010-00388086

DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0


**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that
the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position
on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff

was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:23-cv-08845-MCS-PVC    Document 1-1    Filed 10/20/23    Page 134 of 149    Page
ID #:163

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th

27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

## Peacock vs. Quest Diagnostics

**TOPIC:**
Synopsis: Employee alleges discriminatory termination in violation of CFRA

Case Type: Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Labor & Employment; Family & Medical Leave; Labor & Employment; Disability/Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen
**ATTORNEYS:**
Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.
Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.

## CLAIMED INJURIES
NA

## CLAIMED DAMAGES
According to court records:
Not reported.

## SETTLEMENT DISCUSSIONS
According to court records:

Not reported.

## COMMENTS
According to court records:

The complaint was filed on October 29, 2009.

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT G

KeyCite Yellow Flag - Negative Treatment

Distinguished by Phuong On v. Allstate Property & Casualty Insurance Company, D.Nev., October 17, 2008

142 F.3d 1150

United States Court of Appeals,

Ninth Circuit.

GALT G/S, Plaintiff/Appellee,

v.

JSS SCANDINAVIA, Defendant/
Cross-defendant/Appellee,

D & D Services, Defendant/Cross-
defendant/ Cross-claimant/Appellee,

CRYSTAL ICE & COLD STORAGE
CO., Defendant/Cross-claim
third-party plaintiff/Appellee,

v.

SAFEWAY STORES INC., Third-party
defendant/ Cross-claimant/ Appellant,

v.

BUYERS REFRIGERATED TRUCK
SERVICE OF SACRAMENTO,

Cross-defendant/Appellee,

Can Transport, Inc., Defendant/Cross-
defendant Third-party plaintiff/Appellee,

North America Services, Defendant/Cross-
defendant Third-party plaintiff/Appellee,

A.G. Hapag–Lloyd, Defendant/Cross-
defendant Third-party plaintiff/Appellee.

No. 97–15356.
|
Argued and Submitted Jan. 15, 1998.
|
Decided April 27, 1998.

**Synopsis**

Insurer of importer brought admiralty action against carrier that delivered imported hams to retailer, seeking subrogation, after importer agreed to rescind sale of hams to retailer, because they had been frozen and thus spoiled, allegedly during shipment. Carrier filed third-party complaint against

retailer for indemnification of any judgment in favor of insurer. Insurer assigned subrogation claim against retailer to carrier as part of settlement. The United States District Court for the Northern District of California, D. Lowell Jensen, J., awarded judgment to third-party plaintiff carrier, against retailer, on the subrogation claim assigned to it by insurer. Retailer appealed, and carrier cross-appealed. The Court of Appeals, 60 F.3d 1370, reversed and remanded. On remand, the District Court, Jensen, J., entered judgment in favor of carrier on its implied indemnity claim, and retailer appealed. The Court of Appeals, Rea, District Judge, held that: (1) non-diverse parties could be dismissed to create complete diversity of citizenship on indemnity complaint; (2) attorney fees claimed under state statute could be included with damages claimed by ocean carrier to determine if its claim satisfied amount in controversy necessary for diversity jurisdiction; and (3) retailer was a tortfeasor subject to equitable indemnity claim.

Affirmed.

West Headnotes (10)

[1]    **Federal Courts**  ⟵  Jurisdiction

The existence of subject matter jurisdiction is a question of law reviewed de novo.

26 Cases that cite this headnote

[2]    **Federal Courts**  ⟵  Dismissal as to one or more parties

Non-diverse parties could be dismissed to create complete diversity of citizenship on third-party indemnity complaint; complete diversity was not required at time third-party complaint was filed. 28 U.S.C.(1988 Ed.) § 1332(a); Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

7 Cases that cite this headnote

[3]    **Federal Courts**  ⟵  Amendments as to pleading and parties

Court of Appeals' order remanding indemnity action to district court to determine whether it had diversity jurisdiction did not bar district court from dismissing non-diverse entities.

Case 2:23-cv-08845-MCS-PVC Document 1-1 Filed 10/20/23 Page 139 of 149 Page
Gait G/S v. JSS Scandinavia, 142 F.3d 1150 (1998) ID #:168

1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

28 U.S.C.(1988 Ed.) § 1332(a); Fed.Rules
Civ.Proc.Rule 21, 28 U.S.C.A.

5 Cases that cite this headnote

**[4]    Federal Courts ← Dismissal as to one or
more parties**

Transportation entity that originally impleaded
retailer into action arising from spoiled shipment
of imported ham was dispensable party
that could be dismissed to create diversity
jurisdiction on remaining indemnity claim
against retailer, where retailer had already
been found to be at fault at time the entity
was dismissed, and only party that could
have recovered on claim was ocean carrier
that had taken up defense on behalf of all
transportation entities. 28 U.S.C.(1988 Ed.)
§ 1332(a); Fed.Rules Civ.Proc.Rule 21, 28
U.S.C.A.

4 Cases that cite this headnote

**[5]    Federal Courts ← Interest and costs;
attorney fees**

Attorney fees claimed under state statute giving
court discretion to award such fees to party
that prevails on claim of implied indemnity
could be included with damages claimed by
ocean carrier on its implied indemnity claim
against retailer to determine if claim satisfied
amount in controversy necessary for diversity
jurisdiction. 28 U.S.C.(1988 Ed.) § 1332(a);
West's Ann.Cal.C.C.P. § 1021.6.

251 Cases that cite this headnote

**[6]    Federal Courts ← Interest and costs;
attorney fees**

Where an underlying statute authorizes an
award of attorneys' fees, either with mandatory
or discretionary language, such fees may be
included in the amount in controversy in
determining whether diversity jurisdiction exists.
28 U.S.C. (1988 Ed.) § 1332(a).

530 Cases that cite this headnote

**[7]    Indemnity ← Particular Cases and Issues**

Importer's underlying principal action for cargo
damage against transportation entities allegedly
responsible for freezing shipment of imported
ham was a tort action rather than a contract
action, making equitable indemnity available
against retailer that rescinded its purchase of the
hams but was allegedly responsible for freezing
them.

**[8]    Indemnity ← Relative culpability**

According to California law, equitable indemnity
permits a concurrent tort-feasor to obtain partial
indemnity from another concurrent tort-feasor on
a comparative fault basis.

3 Cases that cite this headnote

**[9]    Indemnity ← Particular Cases and Issues**

Under California law, retailer that froze its
shipment of imported ham was a tortfeasor
subject to equitable indemnity claim brought
by ocean carrier that had defended subrogation
action brought by importer's insurer; retailer had
rescinded its contract with importer, leading to
loss to importer's insurer for which carrier had
partially paid a settlement.

**[10]   Indemnity ← Maritime cases**
        **Indemnity ← Settlement with third party as
        bar to action**

Under California law, ocean carrier that had
settled subrogation claim brought by importer's
insurer arising when shipment of imported ham
froze was not, by virtue of its lack of fault,
precluded from seeking equitable indemnity
from retailer allegedly responsible for freezing
the shipment.

1 Case that cites this headnote

**Attorneys and Law Firms**

**\*1152** James Attridge, Shawn, Mann & Steinfeld, L.L.P., San Francisco, CA, for appellant/third-party defendant.

Rubert P. Hansen, San Francisco, CA, for appellee/third-party plaintiff.

Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV–89–01782 DLJ.

Before: WIGGINS and TASHIMA, Circuit Judges, and REA, District Judge.[*]

**Opinion**

REA, District Judge:

Third-Party Defendant Safeway Stores, Inc. appeals the district court's exercise of diversity-based subject matter jurisdiction after (1) dismissing dispensable non-diverse parties and (2) aggregating the principal claim amount with the projected attorneys' fees. Safeway also appeals the grant of summary judgment in favor of Third–Party Plaintiff Hapag–Lloyd, A.G. on its equitable indemnity claim. We affirm the district court's judgment in its entirety.

**I.**

In 1987, Safeway placed an order with International Trading Co. ("ITC"), a meat importer, for 35,647 pounds of Danish ham. ITC arranged for the shipment of the ham from a supplier in Aarhus, Denmark to the Safeway warehouse in Stockton, California. Defendant Hapag–Lloyd, A.G. ("Hapag–Lloyd") is the ocean carrier which shipped the ham from Denmark to the Port of Oakland. Defendant CAN Transport, Inc. ("CAN") transported the ham by truck from Oakland to Sacramento. In Sacramento, Defendant Crystal Ice & Cold Storage ("Crystal Ice") stored the ham until Defendant D & D Services ("D & D") picked it up and transported it by truck to Safeway's facility in Stockton. These are all hereafter referred to as "the transportation entities."

The ham arrived at Safeway's warehouse on September 18, 1987. When the containers were opened eleven days later, the Safeway employees discovered that the ham was frozen and thus damaged. ITC agreed to rescind the sale and collected its alleged net loss of \$53,243.21 from its insurer, Galt G/S ("Galt").

Galt then brought a subrogation action against the transportation entities alleging that they froze the ham. Hapag–Lloyd assumed the defense of the three ground carrier transportation entities and argued that the ham was not frozen during the journey to Stockton but rather was frozen after it arrived **\*1153** at the Safeway warehouse. The district court allowed the transportation entities to implead Safeway with a claim for indemnification.

On the eve of the January 1993 trial, Hapag–Lloyd paid Galt \$13,500 to settle the principal cargo damage action and acquire the assignment of Galt's subrogation claim for \$53,243.21 against Safeway. Two claims remained for the bench trial: Hapag–Lloyd's subrogation claim for \$53,243.21, assigned to it by Galt, and Hapag–Lloyd's own third-party equitable indemnity claim, now fixed at \$13,500. The district court exercised its supplemental jurisdiction to adjudicate these remaining claims.

At the trial, Hapag–Lloyd presented evidence that the Safeway warehouse has both a freezer room and a cooler room. The records indicating the room in which Safeway kept the meat prior to opening the shipping containers had been destroyed. However, Hapag–Lloyd presented further evidence that during both the ocean voyage and the ground transportation, the temperature of the ham never dropped below 28° F-its freezing temperature. The district court ruled for Hapag–Lloyd, on the claim assigned by Galt, and decided that Safeway was liable for the entire \$53,243.21. The district court did not consider Hapag–Lloyd's \$13,500 equitable indemnity claim.

Both Hapag–Lloyd and Safeway appealed. On appeal, the Ninth Circuit held that the claims for indemnification by Galt and by the transportation entities against Safeway did not sound in admiralty and that the district court had improperly exercised ancillary jurisdiction under Federal Rule of Civil Procedure 14(c) over the claims against Safeway. *Galt G/S v. Hapag–Lloyd, A.G.,* 60 F.3d 1370, 1373–74 (9th Cir.1995). Remanding the action, this Court instructed the district court to dismiss the subrogation claims and to consider "whether to grant Hapag–Lloyd leave to amend its third party complaint to establish [diversity] jurisdiction and pursue its third party claim under Rule 14(a)." *Id.* at 1375.

Thus, on remand, the trial court had before it only Hapag–Lloyd's equitable indemnity claim against Safeway for $13,500. The only possible basis for subject matter jurisdiction would have been diversity of the parties. However, while Safeway is a Delaware corporation with its principal place of business in the state of California and Hapag–Lloyd is a German corporation with its principal place of business in Hamburg, Germany, the remaining transportation entities are California corporations. The district court granted Hapag–Lloyd's motion to dismiss CAN, Crystal Ice, and D & D, thus creating diversity.

A second obstacle to federal subject matter jurisdiction was the then-required $50,000 amount in controversy. Hapag–Lloyd's equitable indemnity claim against Safeway was for the $13,500 spent to settle with Galt, plus the attorneys' fees spent to fend off Galt's claim. In order to reach the requisite amount in controversy, the district court allowed Hapag–Lloyd to aggregate its $13,500 equitable indemnity claim with its claimed attorneys' fees of $44,266,65.[1] The district court then assumed subject matter jurisdiction under 28 U.S.C. § 1332(a) and granted Hapag–Lloyd's motion for summary judgment, holding it to be entitled to equitable indemnity under California law. The district court also held that Hapag–Lloyd was permitted by California Code of Civil Procedure § 1021.6 to recover attorneys' fees, which were later awarded in the sum of $35,662.90.

In this instant appeal, Safeway contends that the district court erred by: (1) granting the motion to dismiss the non-diverse transportation entities, and including attorneys' fees in the amount in controversy; and (2) granting summary judgment for Hapag–Lloyd on its equitable indemnity claim.

## II.

[1]  The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The existence of subject matter jurisdiction is a question of law reviewed *de novo. Ma v. Reno,* 114 F.3d 128, 130 (9th Cir.1997). A grant of summary judgment is reviewed *de* **\*1154** *novo,* as well. *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir.1997).

## A.

*Dismissal of non-diverse parties*

Safeway contends that the district court erred in granting Hapag–Lloyd's motion to dismiss the three California transportation entities pursuant to Federal Rule of Civil Procedure 21 in order to create complete diversity among the remaining parties. Rule 21 establishes, in relevant part, that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms that are just."

First, Safeway argues that complete diversity must be present at the time of the filing of the third-party complaint. Second, Safeway argues that this Court, in the first appeal, remanded to the district court with explicit instructions to determine the existence of diversity jurisdiction without dismissing any parties. Third, Safeway insists that Crystal Ice is a real party in interest and cannot be dismissed because Crystal Ice is the party that originally sought to implead Safeway.

[2]  All three of Safeway's arguments are without merit. First, Rule 21 specifically allows for the dismissal of parties at *any stage of the action.* There is no requirement that diversity exist at the time of the filing of the complaint. According to the Supreme Court in *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), "it is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time, even after judgment has been rendered." *Id.* at 832, 109 S.Ct. at 2222. In fact, *Newman–Green* establishes that "any stage of the action" includes the appeal, holding that an appellate court has the same Rule 21 power as a district court to dismiss a non-diverse party as long as doing so does not prejudice the remaining parties. Otherwise, the Supreme Court reasoned, if the suit were dismissed altogether for lack of subject matter jurisdiction, the plaintiff would simply refile against the defendants in the district court without the non-diverse parties. *Id.* at 837, 109 S.Ct. at 2225. "Nothing but a waste of time and resources would be engendered by ... forcing these parties to begin anew." *Id.* at 838, 109 S.Ct. at 2225; *see also Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519, 1523 (9th Cir.1987) ( "Despite earlier case law to the contrary, it is now settled in this circuit that practicality prevails over logic and that we may dismiss a dispensable, non-diverse party in order to perfect retroactively the district court's original jurisdiction.")

[3]  Safeway's second argument is that the earlier Ninth Circuit decision in this case, *Galt G/S v. Hapag–Lloyd, A.G.,* 60 F.3d 1370 (9th Cir.1995), specified that the district court,

upon remand, determine diversity without dismissing any parties. Safeway points to the following language:

> The district court may have diversity jurisdiction over Hapag–Lloyd *and the other transportation defendants'* indemnity claim against Safeway. We remand the case to the district court to consider in its discretion whether to grant Hapag–Lloyd leave to amend its third party complaint to establish such jurisdiction and pursue its third party claim under Rule 14(a).

*Id.* at 1375 (emphasis added). Safeway contends that this language expressly prohibits the district court from dismissing those non-diverse *other* transportation entities. This Court, however, sees no such express prohibition against dismissing any parties in its earlier decision. The district court was not limited in any way as to its procedural powers upon remand.

[4] Safeway's third argument is that since Crystal Ice was the party to implead Safeway into the case, Crystal Ice is a real party in interest and cannot be dismissed. Safeway fails to support this argument with any rule of law. Further, when the district court dismissed Crystal Ice, it had already determined that Safeway was solely at fault for the damage to the ham, leaving no possibility that Crystal Ice could be found at fault. Finally, Hapag–Lloyd had taken up the defense **\*1155** on behalf of all the transportation entities, and Hapag–Lloyd alone paid the $13,500 to settle with Galt. Crystal Ice has nothing to recover in indemnity from Safeway and the district court properly found that Crystal Ice and the other transportation entities were dispensable parties.

## B.

*Inclusion of attorneys' fees in the amount in controversy*

[5] Hapag-Lloyd spent $13,500 to settle with Galt on the eve of the bench trial at which the district court determined that Safeway froze its own ham. Hapag–Lloyd claims to have spent $44,266.65 in attorneys' fees in defense against Galt's claim. At the time of that trial, the amount in controversy requirement for diversity-based subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a), was $50,000 excluding interest and costs. The district court aggregated the claimed attorneys' fees with the $13,500 in order to reach that amount. In doing so the district court relied on *Goldberg v. CPC International Inc.,* 678 F.2d 1365 (9th Cir.1982), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), where this Court held that "attorneys' fees can be taken into

account in determining the amount in controversy if a statute authorizes fees to a successful litigant." *Id.* at 1367.

While this Court made no such distinction in *Goldberg,* Safeway argues that only attorneys' fees *mandated* by the underlying statute can be included in the amount in controversy; *discretionary* attorneys' fees must be excluded as costs. The "authorizing" statute in *Goldberg* mandates the award of attorneys' fees by providing that a person injured in his or her business property by reason of anything forbidden or unlawful may sue and "shall" be awarded reasonable attorneys' fees. The underlying statute in the instant case, however-California Code of Civil Procedure § 1021.6-provides for an award of attorneys' fees at the district court's discretion:

> Upon motion, a court after reviewing the evidence in the principal case *may* award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgement entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict.

Cal.Civ.Proc.Code § 1021.6 (West 1998) (emphasis added).

The district court's reliance on *Goldberg* is not misplaced; however, the *Goldberg* opinion does not address Safeway's contended distinction between mandatory and discretionary attorneys' fees. There is no case law in this circuit which explicitly addresses that proposed distinction. However, 14A C. Wright & A. Miller, *Federal Practice and Procedure,* § 3712, at 178 (1985), states the following:

> When the applicable substantive law makes the award of an attorney's fee discretionary, a claim that this discretion should be exercised in favor of plaintiff makes the requested fee part of the amount in controversy. But when there is no direct legal authority for an attorney's fee, a request for a fee cannot be included in the computation or the jurisdictional amount.

*See also Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 474 (1st Cir.1979) ( "[As] a general rule, attorneys' fees are excludable in determining the amount in controversy because, normally,

the successful party does not collect his attorneys' fees in addition to or as part of the judgment [citation omitted]. There are however, two logical exceptions to this rule: one where the fees are provided for by contract, and two, where a statute mandates *or allows* the payment of such fees." (emphasis added)); *Blank v. Preventive Health Programs, Inc.,* 504 F.Supp. 416, 421 (S.D.Ga.1980) (citing **\*1156** 14 C. Wright & A. Miller, *Federal Practice and Procedure,* § 3712, at 507 (1976)).

[6]   We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.

## C.

### Equitable indemnity claim

After establishing diversity-based subject matter jurisdiction, the district court granted summary judgment for Hapag–Lloyd on its equitable indemnity claim. Safeway appeals this ruling, arguing that California law precludes equitable indemnity given the facts of this case. Specifically, Safeway makes two arguments: (1) the alleged wrong is not a tort; and (2) equitable indemnity is not a permissible remedy when the claimed indemnitee is totally without fault. Both arguments are without merit.

[7]   Safeway contends that the underlying principal action for cargo damage is in contract rather than tort and thus equitable indemnity is inapplicable. However, this Court has already established that a vessel owner's breach of its duty of care for a cargo gives rise to liability in tort, irrespective of the contractual obligations of the parties. *All Alaskan Seafoods, Inc. v. M/V SEA PRODUCER,* 882 F.2d 425, 429–30 (9th Cir.1989). The existence of a contract between Safeway and Galt does not preclude Hapag–Lloyd's equitable indemnity claim against Safeway.

[8]   [9]   Safeway also contends that neither it nor Hapag–Lloyd is a tortfeasor and that California law requires both indemnitee and indemnitor to be tortfeasors for a proper equitable indemnity claim. According to California law, equitable indemnity permits "a concurrent tortfeasor to obtain partial indemnity from another concurrent tortfeasor on a comparative fault basis." *American Motorcycle Ass'n v. Superior Court of Los Angeles County,* 20 Cal.3d 578, 598, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). Safeway reasons

that it cannot qualify as a tortfeasor because it froze its own ham and cannot tortiously act against itself. Further, Safeway reasons that Hapag–Lloyd cannot qualify as a tortfeasor because it successfully proved itself free of fault.

Safeway's reasoning would produce an unjust result. Safeway rescinded the contract with ITC, which ultimately led to an action by ITC's insurer, Galt, against the various transportation entities. Those transportation entities eventually proved that Safeway itself caused the damage. Those transportation entities—specifically Hapag–Lloyd— incurred costs to fend off Galt's suit, when all the while Safeway was the party that damaged the ham. After sitting back and letting the transportation entities defend themselves against Galt for damage to the ham caused by Safeway, Safeway cannot now duck responsibility by arguing that since it froze its own ham, it cannot be a tortfeasor. The wrongdoing is not that Safeway damaged its own property but rather that Safeway handled its property in such a way that led to a loss to Galt for which Hapag–Lloyd has already paid a settlement. This perspective supports a claim for equitable indemnity. The California Supreme Court recognizes the "obligation resting on one party to make good a loss or damage another has incurred." *Bay Dev., Ltd. v. Superior Court,* 50 Cal.3d 1012, 1029, 269 Cal.Rptr. 720, 791 P.2d 290 (1990) (quoting *E.L. White, Inc. v. City of Huntington Beach,* 21 Cal.3d 497, 506, 146 Cal.Rptr. 614, 579 P.2d 505 (1978)). That principal applies to Safeway here.

[10]   As to Hapag–Lloyd's status as a tortfeasor, *Mullin Lumber Co. v. Chandler,* 185 Cal.App.3d 1127, 230 Cal.Rptr. 122 (1986), establishes a clear rule that a settling innocent party can take on the mantle of joint tortfeasor with the indemnitor in order to maintain an action for equitable indemnity. According to *Mullin Lumber,* a settling defendant is held to a lesser burden of proof in order to establish a right to indemnity and need not prove his or her own fault to be entitled to indemnity:

We hold in an action for equitable indemnity based on comparative fault the settling defendant need only prove the settlement was based on a reasonable estimate of its liability at the time of the settlement.

**\*1157** ...

The court need only find the defendant's 'estimate of potential liability was reasonable at the time of settlement' ... [and][t]his requirement is satisfied if the injured party could state a recognized cause of action

against the settling defendant and the settlor faced actual, potential or reasonably apparent liability.

...

The settling defendant would still have to prove fault on the part of the non-settling defendant contributed to the plaintiff's injuries.

*Id.* at 1133–34, 230 Cal.Rptr. 122. Thus, by California law, Hapag–Lloyd is not precluded from equitable indemnification by virtue of its lack of fault.

The district court did not err in dismissing non-diverse parties under Rule 21 or in including discretionary attorneys' fees in the amount in controversy under 28 U.S.C. § 1332. We agree with the district court that California law permits Hapag–Lloyd to maintain an equitable indemnity claim.

AFFIRMED.

**All Citations**

142 F.3d 1150, 1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108, 98 Daily Journal D.A.R. 4313

**D.**

Footnotes

\*    The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

1    The court did not allow aggregation of the claimed $6,129.09 in costs, however.

End of Document     © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

## Mark A. Crawford v. DIRECTV Inc.

No. BC417507

### DATE OF VERDICT/SETTLEMENT: September 29, 2010

TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**
RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination, retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees, $11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**
Plaintiff: David T. Factor; Economics; Pasadena, CA
**ATTORNEYS:**
Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)
Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)

JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.**

**Facts:**
In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday. He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on

his original days off. He also submitted a note from his social worker which stated that viewing violent images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:23-cv-08845-MCS-PVC    Document 1-1    Filed 10/20/23    Page 147 of 149    Page
Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)
ID #:176

2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

## Fred Denenberg v. California Department of Transportation

No. GIC836582

DATE OF VERDICT/SETTLEMENT: September 16, 2006

TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**
RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**
Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA
Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA
**ATTORNEYS:**
Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)
Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)

JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California
COUNTY: San Diego

**INJURIES: Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his employer treated him.**

Facts:

In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office technician, an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in

Case 2:23-cv-08845-MCS-PVC    Document 1-1    Filed 10/20/23    Page 148 of 149    Page
ID #:177
Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation


ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.